IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR535 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| DANIEL KOVACIC, | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTION TO SUPPRESS AND MOTION |
| Defendant. | ) | TO DISMISS |

Now comes the United States of America, by and through its counsel, Carol M. Skutnik,

Acting United States Attorney, and Brian S. Deckert and Matthew W. Shepherd, Assistant

United States Attorneys, and hereby responds in opposition to Defendant Daniel Kovacic's

("Kovacic" or "Defendant") motions to suppress and dismiss.  (R. 43: Motion to Suppress,

PageID 229-266).  As set forth below, the affidavit clearly established probable cause to search

Kovacic's residence and he has failed to meet the high burden to justify a *Franks* hearing.  As a

result, Kovacic's motion should be denied without a hearing.  Additionally, Kovacic has failed to

present a valid justification for dismissal of his Indictment.

## I.      BACKGROUND

### A.      Facts

On August 17, 2023, at approximately 4:10 p.m., the Wickliffe, Ohio police department

received multiple 911 calls regarding gunshots from residents living in the area of the 1500 block

of Ridgewick Drive.  Wickliffe police responded and spoke to multiple residents who reported

hearing gunshots.  One resident stated that he observed a white male exit from 1548 Ridgewick

Drive and fire at least three shots into the air and then re-enter the residence.  Another resident

stated that approximately two weeks earlier, he and Kovacic argued over the volume of

Kovacic's music.  Kovacic pulled out a pistol, "racked the slide," and pointed it at the neighbor's chest.  The neighbor described that a laser attached to the firearm was centered on his chest.

Approximately 20 minutes after police arrived, a woman exited 1548 Ridgewick Drive and the police detained her.  The woman informed police that she was the girlfriend of Kovacic and that she left him asleep on the couch.  She stated that she had arrived at the residence at approximately 4:00 pm and found Kovacic on the phone with his boss.  At that time, Kovacic's speech was slurred and there were open alcoholic beverages near him.  She described Kovacic as "agitated" and that he had possibly just lost his job.  The woman confirmed that Kovacic used alcohol and steroids and had been suffering from increasing paranoia over the last couple of weeks.  She denied hearing any gunshots while inside the residence but did admit to seeing a small green handgun tucked into the couch while she was cleaning approximately two weeks earlier.

While police were speaking to the woman, Kovacic's mother called her phone.  The police spoke to Kovacic's mother who stated that Kovacic was undergoing some sort of mental crisis and abusing narcotics.  Kovacic's mother stated that on this date Kovacic had sent her several disturbing text messages in which he threatened to kill "the enemies of the white race." Kovacic's father called Wickliffe police and stated that approximately one week earlier, he requested Kovacic take a drug test, which came back positive for cocaine.  Police also contacted Kovacic's boss, who stated that he had terminated Kovacic on this date after a client reported that the defendant had been intoxicated and unprofessional.  Kovacic's boss provided the text communications with Kovacic to the police.

The Emergency Response Team ("ERT") responded on scene and unsuccessfully attempted to make contact with Kovacic for multiple hours by calling and texting his cell phone

2

and using a public address system. Residents in the neighborhood were evacuated and the police established a perimeter around Kovacic's residence.  Several hours after the standoff began, officers observed Kovacic in the upstairs window and ordered him to come to the front door; he complied and was taken into custody without incident.  ERT performed a protective sweep of the residence following Kovacic's surrender.  Police obtained a search warrant for the residence and seized a tan/green Sig Sauer, Model P238, .380 caliber handgun with laser attachment, serial number 27B206165, loaded with 6 rounds of .380 ammunition with one round in the chamber. Officers located the firearm tucked into the cushions of the couch in the living room where Kovacic's girlfriend had observed him sitting.  Additionally, police seized a magazine loaded with 7 rounds of 9mm ammunition from inside of a pair of white athletic shorts in the living room, and also found a holster on the armrest of the couch in which the firearm with attachment could fit.  Police located a Sig Sauer firearm box bearing the matching serial number 27B206165 in Kovacic's bedroom, and discovered 32 rounds of 9mm ammunition and 1 round of .380 ammunition scattered in and around the firearm box.  Outside of the residence, officers found two spent .380 caliber shell casings.   Finally, police seized a holster from underneath the bed which would fit the Sig Sauer without the attachment.  Police discovered a safe inside the room but were unable to access it.  No firearm capable of firing 9mm ammunition was recovered from the accessible areas of the residence.

Kovacic has been convicted of two crimes that are punishable by imprisonment for a term exceeding one year: felonious assault, a felony of the second degree, on or about May 24, 2010, in Case Number 09-CR819, in the Lake County Court of Common Pleas; and Assault on a Peace Officer, a felony in the fourth degree, on or about February 4, 2010, in Case Number 09-CR-546,

in the Lake County Court of Common Pleas.  Kovacic is therefore prohibited from possessing a firearm.

The Sig Sauer was tested for the presence of DNA and compared to a known DNA standard of Kovacic.  The Lake County Crime Laboratory discovered a mixture of DNA on the firearm with a minimum of three contributors.  Kovacic cannot be excluded as a contributor to the mixture, and it is 64.3 trillion times more likely that Kovacic's DNA is part of the mixture than anyone else.

### B.      Search Warrant

On August 17, 2023, Detective James Coolick ("Affiant") from the Wickliffe, Ohio Police Department ("WPD") sought a search warrant for Kovacic's residence, to-wit: 1548 Ridgewick Dr., Wickliffe, Ohio 44092.  The Affiant presented the search warrant to Judge Marisa Cornachio from the Willoughby Municipal Court, Lake County, Ohio.  Judge Cornachio approved the search warrant at approximately 10:50 pm, finding sufficient probable cause outlined within the Affiant's affidavit.  The Affiant executed the search warrant at approximately 11:45 pm.

In the affidavit included with the search warrant application, the Affiant outlined the facts of the investigation.  (R. 43-1: Search Warrant and Affidavit, PageID 267-71). The Affiant detailed the statements provided by witnesses, police officers' observations, and information learned by law enforcement.  The affidavit set forth the following facts in support of probable cause:

> That, affiant is a certified law enforcement officer for the city of Wickliffe and has been for approximately 19 years. Affiant worked as a patrolman for 18 years and has been assigned as the detective bureau supervisor for the past year. Affiant has participated in hundreds of felony investigations including prior weapons investigations.

On August, 17th 2023 numerous emergency calls were received by the Wickliffe Police Department reporting gunshots being fired in the area of the 1500 block of Ridgewick Dr.

On arrival to the area by patrol officers, a witness [PS] reported that the male had fired a gun in front of 1548 Ridgewick Dr and then went back inside the residence closing the door behind him.

Wickliffe Police Dispatch received a phone call from the residence of 1570 Ridgewick who stated he had witnessed the male from 1548 Ridgewick shoot several bullets from a gun and then walk back into his residence.

Affiant met with this resident, [MW], who stated that he had observed a white car park in front of 1548 Ridgewick and a blonde female exited and knocked on the door to 1548 before being let in by a white male. The same white male later exited the residence and fired a gun in the air with a handgun, shooting three bullets before turning around and walking back inside, closing the door behind him. [MW] completed a written statement.

Patrol officers later detained the blonde female leaving the residence, identified as [KS]. Det. Fitch interviewed [KS] who stated that she was at the residence with her boyfriend, Daniel Kovacic, who was the only other person there. She further stated that no one else entered or exited the residence other than Daniel. [KS] confirmed that she has seen Daniel with a handgun in the recent past and that he keeps it concealed in a couch.

Affiant met with the neighbor at 1550 Ridgewick, [DS], who stated that two weeks ago, he got into an argument with Daniel about him playing his music too loud. The argument escalated and Daniel pulled a 9mm silver pistol out, "racked the slide" and pointed the gun at [DS]'s chest threatening him. [DS] completed a written statement.

Affiant checked the residence of 1548 Ridgewick and found the resident was listed as Daniel Kovacic. While running a criminal history check of Daniel, Affiant learned that Daniel is under disability from several felony assault convictions, prohibiting him from possessing a firearm.

Affiant applied for and received a warrant for the arrest of Daniel for Having Weapons While Under Disability. While obtaining the warrant, Daniel exited the residence and surrendered to patrol and ERT officers.

Affiant spoke with a neighbor located at 1546 Ridgewick who stated that she heard loud music coming from 1548 prior to this incident which is not uncommon. She then heard several gunshots coming from what sounded like the residence of 1548 and then the music was turned off and never turned back on.

5

Ptl. Blair located one shell casing in the grassy area directly in front of 1548 Rigewick Dr.

Det. Cook and Fitch attempted to speak with Daniel after his arrest but he refused to make any statements regarding the incident.

Affiant avers that the arrest of Daniel occurred in the nighttime and there is insufficient means available to maintain property security of the residence in order to execute the warrant during the daytime, therefore requesting the search be made in the nighttime.

Based on the above observations, investigation, and experience, this affiant believes that the above referenced residence contains evidence supportive of violations of Ohio Revised Code sections 2923 .13 (Having Weapons While Under Disability), to include clothes, a handgun, firearm ammunition, firearm holster and/or carrying case, and any other firearm related articles.

## C.    Procedural History

On September 20, 2023, Kovacic was charged in a one-count indictment in the Northern District of Ohio.  (R. 1: Indictment, PageID 1-2).  Specifically, he was charged with being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.G. § 922(g)(1) and 924(a)(8).

Presently before the Court is Kovacic's motion to suppress, filed on December 5, 2024. (R. 43: Motion to Suppress, PageID 229-66).  Kovacic's motion seeks suppression of the items recovered in the search of 1548 Ridgewick Drive, Wickliffe, Ohio.  Specifically, Kovacic asserts that the affidavit failed to establish probable cause and the affidavit contained material misrepresentations of fact.  (*Id*.).  As outlined below, these arguments fail and Kovacic's motion should be denied without a hearing.

6

## II.     ARGUMENT

### A.     The Affidavit sets forth sufficient facts to establish probable cause in compliance with the Fourth Amendment.

The Fourth Amendment protects against unreasonable searches and seizures and provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  As such, a warrant may not be issued absent probable cause, which requires a reasonable basis for believing that evidence of crime will be found in a particular place under the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 230-35 (1983).  "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched."  *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975).  The degree of certainty required in an affidavit in support of a search warrant is not measured by a "more likely than not" inquiry.  *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) (reversing district court's finding of no probable cause, holding it erred in applying a preponderance standard to the determination).

Reasonable grounds for belief that there is probable cause is "supported by less than *prima facie* proof but more than mere suspicion."  *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted).  In making a probable cause determination, a judge must "make a practical, common-sense decision whether, given all the circumstances outlined in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be

7

found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). An affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Search warrants are, therefore, judged on the totality of the circumstances. *Id.* at 307 (citing *Gates*, 462 U.S. at 239). Further, when reviewing a judge's probable cause determination, courts give great deference to the issuing judge's determination of probable cause. *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018); *see also United States v. McPherson*, 469 F.3d 518 (6th Cir. 2006) ("[t]his court pays great deference to the determinations of probable cause made by a state magistrate."). A review of the sufficiency of the evidence supporting probable cause is limited to the information in the four corners of the affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

Here, the affidavit established that police responded to the 1500 block of Ridgewick Drive after receiving multiple calls about gunshots being fired. The police spoke to several witnesses, including one who described seeing a white male exit 1548 Ridgewick Drive, fire three shots into the air, and then go back inside. They spoke to a witness that had exited 1548 Ridgewick Drive who identified the Defendant as being the male inside the residence and reported seeing a handgun in the apartment in the past. They spoke to another neighbor that described a prior incident in which the Defendant pointed a gun at him. The police were aware that the Defendant was prohibited from possessing a firearm based upon violent felony convictions. The police located a shell casing in front of the residence in corroboration of the witness statement.

In sum, the totality of the facts set forth in the affidavit established a high probability that the residence would contain evidence of a crime, namely Having a Weapon while Under a

8

Disability in violation of O.R.C. § 2923.13. Therefore, Kovacic's claim that the warrant lacked probable cause fails and an evidentiary hearing is unwarranted.

**B. A *Franks* hearing is not warranted because Kovacic has not met his heavy burden to make a substantial showing of deliberately or recklessly false information in the affidavit.**

Under *Franks v. Delaware*, 438 U.S. 154, 171 (1978), a defendant has the right to "challenge the sufficiency of an executed search warrant by attacking the veracity of the affidavit supporting the warrant." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). A probable cause determination is afforded "great deference," *see United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000), but a defendant may challenge the validity of a search warrant by challenging the truthfulness of the statements in the affidavit. A defendant who attempts to make such a challenge bears a "heavy burden" because there is a "presumption of validity" with respect to the affidavit supporting the application. *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *see also United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *accord*, *United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002), *cert. denied*, *sub nom. Benford v. United States*, 537 U.S. 1036 (2003).

A defendant is entitled to an evidentiary hearing on the truthfulness of the affidavit "*if and only if*" the defendant can first present a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989)(emphasis added); *United States v. Moncivais*, 401 F.3d 751, 757 (6th Cir. 2005); *see also United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012) ("*Franks v. Delaware*, . . . mandates that a defendant 'first provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth." (internal citation omitted) (quoting *United States v.*

*Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)).  "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information.  Without this substantial showing, courts may not make a *Franks* ruling regarding the veracity of statements made in an affidavit."  *Archibald*, 685 F.3d at 558-59 (internal citation omitted).

In order to obtain a *Franks* hearing, a defendant must: (1) make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and (2) prove that the false statement or material omission is necessary to the probable cause finding in the affidavit.  *United States v. Young*, 847 F.3d 328 (6th Cir. 2017).  The Sixth Circuit has elaborated upon the *Franks* standard as follows:

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citations omitted).

In *United States v. Young*, 847 F.3d 328, the Sixth Circuit reviewed whether a district court erred in denying a defendant a *Franks* hearing. *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017), *cert. denied sub nom. Vance v. United States*, 137 S. Ct. 2200 (U.S. 2017). In *Young*, the Court held that denial of the *Franks* hearing was warranted because the Defendant "presented nothing more than an *allegation* that [the affiant] intended to mislead the issuing judge." *Id.* (emphasis in original).

Instantly, the Defendant alleges that the Affiant's affidavit contained several false statements:

- There were multiple calls reporting gunshots in the area of 1500 block of Ridgewick Avenue.

- A witness, "PS", reported that a male fired a gun and then entered 1548 Ridgewick Avenue.

- A witness, "MW", reported seeing a male fire a gun and then walk into 1548 Ridgewick Avenue.

- A witness, "MW", reported seeing a white female enter 1548 Ridgewick prior to the male exiting and firing a gun.

- A witness, "KS", reported seeing the Defendant with a handgun.

- The Affiant obtained an arrest warrant and the Defendant did, in fact, surrender to police.

- A witness, "KM", reported hearing loud music coming from 1548 Ridgewick Avenue.

- A police officer located a shell casing in the grass in front of 1548 Ridgewick Avenue.

- The Defendant refused to make any statements regarding the incident.

- A witness, "DS", stated that the Defendant pulled a 9 mm pistol, "racked the slide", and pointed it at his chest.

Additionally, the Defendant alleges the affiant failed to justify a nighttime search.  The Defendant argues that police should not have performed a protective sweep which did not result in the seizure of any evidence. The Defendant moves to dismiss the case based upon perceived violations of internal police policy regarding body cams.  Finally, the Defendant accuses law enforcement with tampering with discovery.

The statements in the search warrant affidavit that Defendant alleges are false are not actually false, contain minor differences from collected information, or are misconstrued by the

11

Defendant.  Even if the Defendant could show that any of the statements were false, the Defendant cannot meet his high burden of showing that any of the statements were made intentionally and deliberately or with reckless disregard for the truth.  Further, the removal or substitution of any of the statements does not affect the finding of probable case. For all these reasons, the government requests this Honorable Court deny Defendant's motion to suppress without a hearing.

> **1.    There were multiple calls reporting gunshots in the area of 1500 block of Ridgewick Drive.**

The Defendant alleges that the search warrant affidavit's general description of law enforcement receiving multiple emergency calls regarding gunshots in the area of Ridgewick Drive contained false statements.  Specifically, the search warrant affidavit states: "*On August, 17th 2023 numerous emergency calls were received by the Wickliffe Police Department reporting gunshots being fired in the area of the 1500 block of Ridgewick Dr.*"  This introductory sentence in the search warrant affidavit was true and accurate and provided the reviewing court a basis to understand why law enforcement was involved in this matter.

The Government produced recorded 911 calls made to the Wickliffe Police Department regarding this incident as part of its discovery to the Defendant.  There were nine (9) recorded telephone calls, and in all of them the callers reported hearing gun shots.  In all nine (9) recorded telephone calls, the callers reported hearing the gun shots in the area of the 1500 block of Ridgewick Drive.  In three (3) of the recorded calls, the callers identified the shots coming from the Defendant's residence, 1548 Ridgewick Drive.  Those three callers identified the shooter as the resident of 1548 Ridgewick Drive and one of the callers described the shooter as a white male in his mid-30s that drives a white Cadillac.  One of the callers reported that he observed the incident.  (*See* Exhibits 1A-1I: Recorded 911 Calls; and Exhibits 2A-2I: Transcripts of Recorded

911 Calls).  The introductory sentence in the affidavit is true and accurate as evidenced by these calls.  It is somewhat confusing from the Defendant's Motion to Suppress just exactly what he is complaining is false in this statement.  The Defendant acknowledges that there were 911 calls and even quotes the callers.  (R. 43: Motion to Suppress, PageID 234).  The Defendant acknowledges that the callers reported hearing gunshots and does not dispute that the callers lived in the area of the 1500 block of Ridgewick Drive.  The Defendant instead argues in his motion to suppress that the introductory sentence in the search warrant affidavit is false because the 911 calls do not demonstrate that Daniel Kovacic fired a gun.  (R. 43: Motion to Suppress, PageID 234-35).  The sentence in the search warrant affidavit does not state this so the Defendant is alleging that a statement that does not exist is false.  The statement is in fact a true and accurate statement and Defendant has failed to present any evidence to the contrary.

### 2. A witness, "PS", reported that a male fired a gun and then entered 1548 Ridgewick Avenue.

The Defendant alleges that the search warrant affidavit's description of a statement made by a witness to law enforcement is false.  Specifically, the search warrant affidavit states: "*On arrival to the area by patrol officers, a witness [PS] reported that the male had fired a gun in front of 1548 Ridgewick Dr and then went back inside the residence closing the door behind him.*"  This portion of the search warrant affidavit accurately summarizes the statement made by a witness to law enforcement while they were on scene.

Sgt. Sopko of the Wickliffe Police Department was on scene during this incident and writes in his report: "While I was observing the front of the suspected shooter's home I was approached by a male, later identified as 18 year-old [PS], who indicated that his family member witnessed the shooting and after the rounds were fired, the shooter went inside 1548 Ridgewick."  (R. 43-4: WPD Report, PageID 282).  The Defendant included in his motion to suppress that he

retained an investigator who interviewed "PS."  (R. 43: Motion to Suppress, PageID 236).

According to the investigator, PS stated that he was interviewed by the police and never saw the

shooting.  (*Id.*, PageID 236-37).  This is not inconsistent with the police report or the search

warrant affidavit.  Contrary to the Defendant's assertion in his motion, the affidavit does not

state that PS personally observed the shooting.  Contrast this with the description of information

provided by an eyewitness, MW.  When describing MW's statement to police, the affidavit

states: "A witness, "MW", reported that he ***observed*** a white car park in front of 1548 Ridgewick

and a blonde female exit and knock on the door to 1548 Ridgewick.  A white male answered the

door and allowed the blonde female to enter 1548 Ridgwick.  The same male later exited the

residence and fired a handgun in the air three times before returning into the residence and

closing the door." (emphasis added).  In the affidavit's description of PS's statement, it merely

states that PS "***reported***" and does not indicate that he saw the events.

Hearsay statements in an affidavit may properly be considered.  *United States v. 526

Liscum Drive,* 866 F.2d 213 (6th Cir. 1989).  *See generally, Franks v. Delaware,* 438 U.S. 154,

165, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) (probable cause may be founded upon hearsay and

information obtained from informants presented in search warrant affidavits).  The Affiant

properly included the hearsay statement of an identified witness that was corroborated.

But even if this Court were to hold that the Affiant's description of a witness statement

was false, and not merely unclear as to its attribution, the Defendant still has not shown that it

was made intentionally or with reckless disregard for the truth.   Further, the Defendant cannot

prove the second element to entitle him to a *Franks* hearing—the Defendant cannot show that the

probable-cause finding required the allegedly false statement.  *Id*.  For even if "'material that is

the subject of the alleged falsity or reckless disregard is set to one side,'" as long as "'there

remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'" *Mastromatteo*, 538 F.3d at 545 (quoting *Franks*, 438 U.S. at 171-72) (footnote omitted).  An affidavit, with the false part excised, will still establish probable cause if it "'provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at' the stated location.'" *Mastromatteo*, 538 F.3d at 545 (quoting *Graham*, 275 F.3d at 504).

This statement was not false, and the Defendant has failed to present any evidence that the Affiant intentionally and deliberately or with reckless disregard for the truth sought to mislead the magistrate.  If the Court were to substitute language that more fully illustrated that PS was reporting what his family member observed, the affidavit would still contain probable case based upon all of the other information provided which corroborates that hearsay statement.

> **3.     A witness, "MW", reported seeing a male fire a gun and then walk into 1548 Ridgewick Avenue.**

The Defendant alleges that the search warrant affidavit's description of a statement made by a witness to law enforcement is false.  Specifically, the search warrant affidavit states: "*Wickliffe Police Dispatch received a phone call from the residence of 1570 Ridgewick who stated he had witnessed the male from 1548 Ridgewick shoot several bullets from a gun and then walk back into his residence.*"  This portion of the search warrant affidavit accurately summarizes the statement made by the witness to law enforcement.  The Defendant alleges the above is a false statement because MW "did not identify the shooter as being 'the male from 1548 Ridgewick' in his 911 call" and that MW did "not state that the shooter 'walk[ed] back into the residence' as alleged in the Affidavit."  (R. 43: Motion to Suppress, PageID 238).

The Defendant goes on to provide a partial transcript for this Court to consider of MW's call to 911; however, he omits the most salient details of the call.  The Government has provided

15

the entire transcript for this Court to consider in its exhibit.  The portion that the Defendant chose to omit reads as follows:

> M:    I was sitting out in front of my condominium. And this happened I'd say between 3:45 and 4 pm. A uh, a fella across the way came out of another condo and fired off a gun 3 times into the air. Loud. Loud gun. And uh, I didn't know what to do about it.
> **D:    What address did he come out of, what was the address?**
> **M:    Uh, 1548.**

The witness clearly reported that he saw a male from 1548 exit the residence and fire a gun three times into the air.  The Defendant's allegation that the caller never said that the male from 1548 was the shooter is refuted by the phone call itself.  The Defendant also argues that MW never explicitly states that the shooter walked back into the residence.  While it is true that MW does not explicitly say during the 911 call that the shooter walked back into the residence after firing the gun, he does provide that information later in a written statement.   (Exhibit 3, Written Statement of MW).  MW states in his written statement that "I looked up and the man had a gun pointed in the air (up at the sky) when he was done shooting he went back into the condo."  (*Id.*).

The first step in the *Franks* analysis is to determine whether "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]"  *Franks,* 438 U.S. at 155-56.  Mere inadvertence or negligence in making erroneous statements is insufficient to require exclusion.  *United States v. Elkins,* 300 F.3d 638, 649 (6th Cir. 2002).  It cannot be said that the Affiant stating that a witness described seeing a white male enter back into the residence during a phone call when he said it during an interview is a false statement made knowingly and intentionally or with reckless disregard for the truth because it is ultimately accurate.  The Defendant is parsing sources of information while not allowing for the fact that the Affiant is not limited to one phone call or one witness statement but

may use all in conjunction in the affidavit.  Further, the Affiant personally spoke with the witness and included that information in a following paragraph.  At best, it can be argued that the Affiant co-mingled the information provided by the witness at different times that day.  To say that this rises to the level of deliberate and intentional or with reckless disregard for the truth, is a bridge too far.

Even if this Court were to find that this satisfies the first element necessary for a *Franks* hearing, the Defendant still cannot satisfy the second element because the summary of MW's statement in the following paragraph is true and accurate.

### 4. A witness, "MW", reported seeing a white female enter 1548 Ridgewick prior to the male exiting and firing a gun.

The Defendant alleges that the search warrant affidavit's description of a statement made by a witness to law enforcement is false.  Specifically, the search warrant affidavit states: "*Affiant met with this resident, [MW], who stated that he had observed a white car park in front of 1548 Ridgewick and a blonde female exited and knocked on the door to 1548 before being let in by a white male. The same white male later exited the residence and fired a gun in the air with a handgun, shooting three bullets before turning around and walking back inside, closing the door behind him. [MW] completed a written statement.*"  This portion of the search warrant affidavit accurately summarizes the written statement made by the witness to law enforcement. (See Exhibit 3: Written Statement of MW).   The Defendant alleges the above is a false statement because the Defendant hired an investigator to speak with MW months after this incident and according to the investigator MW currently does not recall any visitor at 1548 Ridgewick Drive on the day of the incident.   (R. 43: Motion to Suppress, PageID 240).  Importantly, the witness never disputes that he signed the statement or that the information contained in it was incorrect, but merely does not remember any visitors that day.  The critical inquiry is what information was

17

known to the Affiant at the time the probable cause determination was made.  The fact that the witness now states that he does not remember seeing any visitors is not relevant to the determination of probable cause at the time the search warrant was obtained.

The Defendant, without evidence, claims that MW's written statement was false because he did not write it, but merely signed it.  For discovery purposes, a witness statement, as defined under 18 U.S.C. § 3500(e) includes: 1) written statements made by the witness and signed or otherwise adopted or approved by the witness; 2) contemporaneous and substantially verbatim electronic recordings; and 3) grand jury transcripts.  There is no requirement that the witness personally write the statement and it has no effect here when considering probable cause in an affidavit.  Again, the witness does not dispute the information in the written statement and only does not recall one portion that has no bearing on the finding of probable cause.

The Defendant also complains that the Affiant omitted that the witness was not familiar with the individual that he observed fire the weapon on the day of the incident.  (R. 43: Motion to Suppress, PageID 242).  Not all information in the affiant's possession need be included in the warrant affidavit. *United States v. Garza,* 980 F.2d 546, 551 (9th Cir. 1992).  The information that the witness was not familiar with the person that he observed is not relevant to the determination of probable cause.

Despite the fact that it is apparent from the affidavit that the witness did not identify the Defendant, this is not an omission, much less a material omission.  In *Mays v. City of Dayton*, the Sixth Circuit explained that a *Franks* hearing is also justified when there has been a material omission in an affidavit.  134 F.3d 809, 815 (6th Cir. 1998).  However, the standard to obtain a *Franks* hearing for a material omission is higher than a false statement and is only merited in rare cases.  *Id.*  When there is a material omission of fact, a *Franks* hearing is granted only if the

defendant "makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause[.]" *Id.* at 816 (emphasis in the original).  What makes this burden more onerous than the inclusion of a false statement is that the defendant must show that the affiant omitted facts with the intention to mislead the magistrate judge.  *Id.*  Further, the Defendant must also make a substantial preliminary showing that "probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it."  *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008).

In this case, the information provided by witness MW does not include an identification of the Defendant.  The Defendant alleges that the affidavit omits a fact that is apparent from the information provided that it did not actually happen.  The Defendant is essentially claiming that the Affiant omitted something that does not exist.  Regardless, even if this information was included, it would not have changed the probable cause determination and the Defendant has failed to meet the very high standard that the Affiant intended to mislead the Magistrate Judge.

### 5.    A witness, "KS", reported seeing the Defendant with a handgun.

The Defendant alleges that the search warrant affidavit's description of a statement made by a witness to law enforcement is false.  Specifically, the search warrant affidavit states: "*Patrol officers later detained the blonde female leaving the residence, identified as [KS]. Det. Fitch interviewed [S] who stated that she was at the residence with her boyfriend, Daniel Kovacic, who was the only other person there. She further stated that no one else entered or exited the residence other than Daniel. [S] confirmed that she has seen Daniel with a handgun in the recent past and that he keeps it concealed in a couch.*"  This portion of the search warrant affidavit accurately summarizes the statement made by the witness to law enforcement.

19

Detective Fitch interviewed the Defendant's girlfriend, KS, both at the scene and back at the police station.  Portions of the interview on scene were captured on bodycams and the interview at the police stations was video recorded.  A copy of the video and transcript of the interview at the police station has been attached as an exhibit.  (See Exhibit 4: Video Interview of KS; and Exhibit 4A: Transcript of Video Interview).  During the interview, KS informed police that she had seen a green handgun tucked behind the couch cushions while she was cleaning approximately two weeks prior.  KS was asked, "[h]ow many guns have you seen him to possess?" and she responded "I, uh, that would be the only thing that was in the couch. That was the, that was it."  The Defendant appears to be arguing the difference between constructive and actual possession in the language used in the affidavit.  The Detective asked KS how many firearms she saw the Defendant possessing and she indicated just the one behind the couch. Now, the Defendant alleges that the Affiant made a false statement when he wrote that KS had seen the Defendant "with a handgun in the recent past."  KS described seeing a firearm inside the Defendant's residence, to which he had exclusive access to, and where no one else resided.

It cannot be said that this was a false statement made knowingly and intentionally or with reckless disregard for the truth.  Even if this Court were to find that this satisfies the first element necessary for a *Franks* hearing, the Defendant still cannot satisfy the second element because even if the Court were to excise the words "Daniel with" from the affidavit, the information still provides evidence sufficient for probable cause.

> **6.** **The Search Warrant affidavit accurately states that the Affiant obtained an arrest warrant for the Defendant and he ultimately surrendered.**

The Defendant alleges that the search warrant affidavit contains false statements when the affiant described obtaining an arrest warrant for the Defendant and that he ultimately

surrendered.  Specifically, the search warrant affidavit states: "*Affiant applied for and received a warrant for the arrest of Daniel for Having Weapons While Under Disability. While obtaining the warrant, Daniel exited the residence and surrendered to patrol and ERT officers.*"  This portion of the search warrant affidavit accurately depicts the affiant's conduct prior to obtaining the search warrant and the conduct of the Defendant.  The Defendant alleges there are false statements in the application for arrest warrant as well; however, he has filed a motion to suppress based upon perceived false statements in the search warrant affidavit. T he Defendant does not dispute in his motion to suppress that the affiant applied for and received an arrest warrant.  (R. 43: Motion to Suppress, PageID 245- 47).  The Defendant takes issue with statements made in the arrest warrant affidavit; however, this is irrelevant to this sentence in the search warrant affidavit because the affiant did in fact obtain an arrest warrant.

The Defendant also alleges that the Affiant made a false statement when he described the manner in which the Defendant was taken into custody as a "surrender."  The Defendant is quibbling with semantics that have no bearing on a probable cause determination.

In this case, the police were called to Ridgewick Drive after receiving multiple calls of shots being fired, and specifically by the resident in 1548 Ridgewick.  What followed was a five-hour standoff that included the use of the ERT.  Police attempted to contact the Defendant by phone and an external public address speaker.  Eventually, the Defendant was seen in the window and ordered to come out of the residence, which he did.  He was then taken into custody. The Defendant now claims that he was sleeping the whole time and points to his girlfriend's statements as evidence of that.  Putting aside the girlfriend's level of truthfulness, law enforcement could not take the risk given the erratic behavior of the Defendant as described to law enforcement by his family and neighbors.  The Defendant takes issue with the use of the

21

term "surrender," however he has failed utterly to provide "a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit[.]" *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171). An allegation of falsehood is insufficient on its own. Rather, "an offer of proof" had to accompany his allegation, and he needed to "provide supporting affidavits or explain their absence." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The Defendant claims that he did not surrender to police. Contrary to the Defendant's claim, it is undisputed that he was ordered out of the residence by police, that he then came out of the residence, and that he was then taken into custody by the police. This is the very definition of surrendering to police. This Court should deny the Defendant's motion without a hearing as he has failed the first element of *Franks*.

### 7. A witness, "KM", reported hearing loud music coming from 1548 Ridgewick Drive.

The Defendant alleges that the search warrant affidavit's description of a statement made by a witness to law enforcement is false. Specifically, the search warrant affidavit states: "*Affiant spoke with a neighbor located at 1546 Ridgewick who stated that she heard loud music coming from 1548 prior to this incident which is not uncommon. She then heard several gunshots coming from what sounded like the residence of 1548 and then the music was turned off and never turned back on.*" This portion of the search warrant affidavit accurately summarizes the statement made by the witness to law enforcement.

The Defendant alleges that the portion of this statement referring to the witness hearing loud music is false. The Defendant points to a police report, a 911 call, and a written statement as proof that the Affiant intentionally made a false statement in his affidavit regarding the neighbor hearing loud music. The Defendant attaches as an exhibit a police report that was

written by a police officer who interviewed the witness the following day.  The Defendant, curiously, fails to address the police report of the Affiant.  The Affiant reports the following: "I then spoke with a neighbor who had to be escorted out of 1546 Ridgewick. The resident, [KM] and her 6yo son [JM], had been at the residence this afternoon. [K] reported to me that her neighbor at 1548 (Daniel) usually plays music from his residence quite loudly. [K] heard the loud music there before the shooting. [K] heard about 4 gunshots coming from what sounded like inside the residence of 1548 and then heard no music afterward."

It is not unusual that a written statement, 911 call, and interview of the same witness may contain additional information.  The most important detail in all of the statements was that the witness heard gunshots coming from her neighbor's residence.  The Defendant hired an investigator to speak with the witness and none of the information gathered detracts from the information in the affidavit.

It cannot be said that this was a false statement made knowingly and intentionally or with reckless disregard for the truth.  This portion of the affidavit is based on the Detective's interview of the witness and the Defendant's own investigator did not provide any contradictory information.  Also, whether or not there was loud music coming out of the apartment is completely immaterial to the determination of probable cause that there was evidence of illegal firearms possession by the Defendant in his apartment.

> **8.**     **A police officer located a shell casing in the grass in front of 1548 Ridgewick Avenue.**

The Defendant alleges that the search warrant affidavit's description of an observation made by a law enforcement officer.  Specifically, the search warrant affidavit states: "*Ptl. Blair located one shell casing in the grassy area directly in front of 1548 Rigewick Dr.*"  This portion

of the search warrant affidavit accurately depicts the observations made by a law enforcement officer.

The Defendant alleges that the Affiant made a false statement when he stated that there was a shell casing found in the grassy area directly in front of 1548 Ridgewick Drive.  As can be seen in the attached exhibit, the shell casing was found on the left side of the walkway that is shared by 1550 and 1548 Ridgewick Drive.  (See Exhibit 5: Photograph).  The front doors to these residences are separated by inches.  The question of what is considered "directly" in front of 1548 in this case is a matter of inches.  The shell casing was certainly found in front of 1548 Ridgewick as opposed to a house located down the street.  This information corroborated the statements made by MW, who witnessed a male exit 1548 Ridgewick Drive and fire a firearm into the air three times.  Shell casings do not fall directly to the ground after firing and the exact location is not as relevant as the general location.

Even if this Court found this description of where the shell casing was found was inaccurate, that still would not rise to the level of a deliberate and intentional false statement. An affiant's negligence or innocent mistake is insufficient to warrant a *Franks* hearing as "*Franks* recognizes that the information an *affiant* reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made."  *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)).  If the affidavit had listed 1550 instead of 1548 as the address, this still would not have affected the probable cause determination.

### 9.    The Defendant refused to make any statements regarding the incident.

The Defendant alleges that the search warrant affidavit's description of law enforcement's interaction with the Defendant was intentionally and deliberately false. Specifically, the search warrant affidavit states: "*Det. Cook and Fitch attempted to speak with Daniel after his arrest but he refused to make any statements regarding the incident.*" This portion of the search warrant affidavit accurately depicts law enforcement's interactions with the Defendant. The Defendant did not make any statements about the incident for which the police were called to the scene, i.e. the shooting that occurred outside the residence of 1548 Ridgewick Drive.

It is true that the Defendant made many statements after he refused to sign and acknowledge the advice of rights and invoked his right to an attorney. His statements after invoking his right to counsel generally complained about the police presence at his residence. The inclusion or exclusion of those statements in the affidavit has no bearing on the finding of probable cause.

The Defendant included a partial transcript of the Defendant's conversation with Wickliffe Police Department but did not include the portion in which the Defendant refused to acknowledge his rights and invoked his right to an attorney. The conversation that followed consisted of the Defendant asking the police officers questions, rather than an interrogation. When specifically asked if he would like to speak to an attorney or answer the police officer's questions, he indicated, "I'd rather you guys tell me, tell me, answer my questions. I don't need you guys to ask me any questions." (Def. Ex. M: Video Interview, Minute 2:18-2:28). The Officer specifically tells Kovacic at one point that because he requested a lawyer, they could not ask him any questions or go into the facts of the case. (*Id.*, Minute 6:02-6:20).

25

The statement in the affidavit is accurate in that the Defendant immediately invoked his right to an attorney and refused to sign a form acknowledging his understanding of his rights, thus refusing to make a statement regarding the incident.  The fact that the Defendant then continued to make statements and question the police about the stand-off does not change that initial interaction.  The Defendant did not make any statements about the shooting itself.

This was an accurate statement and the inclusion of his statements saying "he did nothing wrong" would not have changed the probable cause determination and if this sentence was excised from the affidavit, that would not change the probable cause determination either.  Thus, the Defendant has failed to establish both elements to justify a *Franks* hearing.

> **10.  A witness, "DS", stated that the Defendant pulled a 9 mm pistol, "racked the slide", and pointed it at his chest.**

The Defendant alleges that the search warrant affidavit's description of law enforcement's interview with a witness was intentionally and deliberately false.  Specifically, the search warrant affidavit states: "*Affiant met with the neighbor at 1550 Ridgewick, [DS], who stated that two weeks ago, he got into an argument with Daniel about him playing his music too loud. The argument escalated and Daniel pulled a 9mm silver pistol out, "racked the slide" and pointed the gun at [D]'s chest threatening him. [D] completed a written statement.*"  This portion of the search warrant affidavit accurately depicts law enforcement's interview with the witness.

The Defendant alleges that the Affiant intentionally and deliberately made a false statement when he summarized the statements made by a witness.  The Defendant bases his allegation on the fact that the witness's written statement does not describe the firearm as a "9mm silver pistol" and does not state that the Defendant "racked the slide."  While it is true that the witness' written statement does not mention either of those things, the Affiant wrote a report

regarding his interview with the witness.  (*See* R. 43-4: Police Report, PageID 288-90).  In this report, the Affiant recorded that the witness described the firearm as a "small silver pistol" with a laser under the barrel and stated the Defendant "cocked the slide back" before pointing it at his chest.

There is no requirement that an affiant must only include information that has been reduced to writing.  In some instances, affiants are drafting search warrant affidavits based only upon verbal information that they receive either directly or indirectly from witnesses and law enforcement officers.  There are minor deviations in this sentence in the affidavit from the witness's written statement that do not change the overall intention behind the statement, namely that the Defendant previously threatened the witness with a firearm.

The Defendant included an affidavit disputing the veracity of this witness's account. Several courts, have determined that a defendant's affidavit stating simply that he did not commit the acts alleged in a search warrant affidavit "is hardly the 'substantial preliminary showing' required under *Franks*."  *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003) (Even if some information in the search warrant affidavit is ultimately proven false, the defendant's affidavit "does not equate to proof that the affiant lied or was recklessly indifferent to the truth."); *United States v. Bateman*, 945 F.3d 997, 1010 (6th Cir. 2019) (Accepting defendant's claim that agent's descriptions contained falsehoods, defendant failed to make substantial showing that the agent "knowingly, intentionally, or with reckless disregard to the truth, included such falsehoods or material omissions in his affidavit."); *United States v. Hill*, No. 1:20-cr-12, 2021 U.S. Dist. LEXIS 67526, 2021 WL 1305381, at *7 (S.D. Ohio Apr. 7, 2021) ("[E]ven if the information in the search warrant was ultimately false, the defendant provided no evidence that the Affiant intentionally or recklessly misrepresented facts in order to secure the search

27

warrant."); *United States v. Sheridan*, No. 5:18CR525, 2020 U.S. Dist. LEXIS 36163, 2020 WL 1025162, at *3 (N.D. Ohio Mar. 3, 2020) (Defendant's "bare statement that he did not sell narcotics to the informant during the relevant period" does not entitle him to a *Franks* hearing because it fails to preliminarily show that the affiant intentionally or recklessly provided false statements.).

In this case, the fact that there are minor differences between the affiant's recorded recollection of his interview with a witness and the search warrant affidavit, does not equate to the showing of deliberate and intentional false statements. Further, the Defendant's affidavit disputing this incident "is hardly the 'substantial preliminary showing' required under *Franks."*

## C.    Defendant's Additional Claims

The Defendant makes some additional arguments in his motion to suppress and requests this Court to exclude the evidence seized pursuant to the search warrant. First, the Defendant claims that the affiant failed to provide the magistrate judge adequate justification for a nighttime execution. Second, the Defendant complains of a protective sweep during which no evidence was seized. Third, the Defendant requests a dismissal in his motion to suppress because the Wickliffe did not have their body cameras active for the entirety of this incident. Fourth, and finally, the Defendant alleges that law enforcement committed a discovery violation by "tamper[ing] with evidence/reports regarding the August 17, 2023, incident" and requests a dismissal.

### 1.    The Affiant properly justified the request for a nighttime search execution.

The Affiant justified a nighttime search in his affidavit stating that "the arrest of Daniel occurred in the nighttime and there is insufficient means available to maintain property security of the residence in order to execute the warrant during the daytime, therefore requesting the

search be made in the nighttime."  (R. 43-1, Search Warrant, PageID 271).  The issuing

magistrate agreed, and her order authorized the search "in the daytime or the nighttime."  (R. 43-

1, Search Warrant, PageID 267).  Nighttime execution of a search warrant is permissible

under Federal Rule of Criminal Procedure 41(c)(1), as well as the analogous Ohio rule, if

nighttime execution is specifically provided for in the warrant and is supported by "reasonable

cause."  Fed. R. Crim P. 41(c)(1); Ohio Crim. R. 41(C). The federal rule "requires only some

factual basis for a prudent conclusion that the greater intrusiveness of a nighttime search is

justified by the exigencies of the situation."  *United States v. Searp*, 586 F.2d 1117, 1121 (6th

Cir. 1978).  In this case, the intrusiveness concern is greatly reduced because the Defendant had

already been arrested and removed from the location.  The Affiant justified his request because

police would have had to maintain security on the property until 7:00 am, roughly 9 hours later.

There were no federal agents involved in the execution of this search warrant.  When

federal officers are not involved in obtaining or executing a challenged search warrant, Rule

41(a) does not apply.  *See United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999); *United

States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992).  In Ohio, there is no exclusion of evidence in

the event a search warrant does not strictly comply with O.R.C. § 2933.24(A) or Criminal Rule

41(C).  *Ohio v. Gipson*, 2009-Ohio-6234, 2009 WL 4263279, *9 (Ohio Ct. App. Nov. 30,

2009) ("Even assuming *arguendo* that a nighttime search was not warranted, we do not find this

failure warrants the application of the exclusionary rule, for the same reasons we previously

provided in our discussion as to the application of the exclusionary rule with 'knock-and-

announce' violations."); *Ohio v. Noble*, 2020-Ohio-695, 2020 WL 973693, *7 (Ohio Ct. App.

Feb. 28, 2020) (Froelich, J., concurring) ("[S]uppression is not an available remedy" for

violations of Ohio law requiring reasonable cause be shown for a nighttime search.).

The affiant provided a reasonable justification for a nighttime execution and even if this Court were to disagree, the exclusionary rule would not apply.

> **2.      Law enforcement properly performed a protective sweep and there was no evidence seized during the sweep.**

The Defendant claims that law enforcement should not have performed a protective sweep because there was no longer an exigent circumstance, i.e. the Defendant had been arrested. As the Supreme Court explained in *Maryland v. Buie*, a protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). This search is limited to "a cursory inspection of those spaces where a person may be found" and may "last[] no longer than is necessary to dispel the reasonable suspicion of danger." Law enforcement may conduct a protective sweep only if there are specific articulable facts from which a reasonable officer could conclude that someone in the home poses a danger to people at the arrest scene. In this case, law enforcement had assembled an ERT and attempted to negotiate with the Defendant over 5 hours without success. Law enforcement knew that he had been acting erratic and fired a gun multiple times out in front of his house. The Defendant had threatened to "kill the enemies of the white race" and was possibly on drugs. The Defendant's girlfriend had indicated that he was alone but there was reason to question her truthfulness with police. Law enforcement had justification to perform a protective sweep, but even if this Court were to find that they did not, no evidence was seized and the protective sweep was not even mentioned in the search warrant affidavit. The Defendant argues that this Court should exclude evidence obtained during the execution of the search warrant based upon the protective sweep but that is an improper application of the exclusionary rule.

**3.      A perceived violation of an internal police policy is not a valid basis to dismiss an indictment.**

In this matter, approximately 33 police officers responded to this incident from 6 different police jurisdictions during the 9 hours.  There were 14 police officers from Wickliffe Police Department and the remaining officers comprised the ERT which consists of police officers from various departments in the surrounding area.  ERT officers do not wear body cameras in their capacity as ERT members.  At least 17 different bodycam videos were provided to defense that were provided to the Government by the Wickliffe Police Department.  These videos depict interviews with a witness, KS, and the movements of officers during the stand-off. The Defendant alleges that law enforcement violated an internal policy because there are not more recordings from this incident. He now moves to dismiss the indictment.

The Defendant does not provide a precedent for his proposition that a potential violation of an internal police policy is a valid justification to dismiss an indictment.  The Defendant cites to the concept of fundamental fairness and due process.  (R. 43: Motion to Suppress, PageID 262).  The Defendant generally alleges that the Wickliffe Police officers' failure to record their entire time on Ridgewick Drive prevented him from obtaining "important and significant evidence." (*Id.*, PageID 263).  This evidence, according to the Defendant, consisted of interviews with witnesses, his family members, and recordings of the protective sweep and search.

The destruction of material, exculpatory evidence violates the due process rights of an accused. *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant bears the burden of showing that the destroyed or lost evidence is both material and exculpatory.  *Brady*, 373 U.S. 83; *Strickler v. Greene*, 527 U.S. 263, 291 (1999); *United States v. Agurs*, 427 U.S. 97 (1976).  However, if the evidence in question is merely potentially exculpatory, due process is not violated unless the

evidence was lost as a result of bad faith.  *Arizona v. Youngblood,* 488 U.S. 51 (1988); *Illinois v. Fisher*, 540 U.S. 544, 548 (2004); *see also California v. Trombetta,* 467 U.S. 479, 491 (1984).

Mere negligence does not constitute bad faith.  *Youngblood,* 488 U.S. at 58.  Instead, bad faith is evidenced "when the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant."  *Youngblood*, 488 U.S. at 58.  When evidence is destroyed absent bad faith, the destruction of evidence, even potentially exculpatory evidence, does not violate the accused's constitutional rights.  *Id.*

Here, Defendant argues that police officers violated department policy by failing to activate their body cameras.  But even if a policy violation occurred, mere failure to activate body cameras in violation of department policy does not itself establish the bad faith that is essential to a due process violation under *Youngblood*, 488 U.S. 51.  *See United States v. Aguirre-Cuenca*, 2023 U.S. App. LEXIS 1105, 2023 WL 245710, at *3; *Durr v. Slator*, 558 F. Supp. 3d 1, 36 (N.D.N.Y. 2021); *United States v. Taylor*, 312 F. Supp. 3d 170, 178 (D.D.C. 2018); *United States v. Savage*, No. cr-21-314, 2021 U.S. Dist. LEXIS 250209, 2021 WL 7186266, at *5 (E.D. Okla. Nov. 19, 2021), report and recommendation adopted, 2022 U.S. Dist. LEXIS 5956, 2022 WL 118408 (E.D. Okla. 2022); *United States v. Tillard*, No. 18-cr-6091, 2020 U.S. Dist. LEXIS 1539, 2020 WL 57198, at *5 (W.D.N.Y. Jan. 6, 2020).

In this Circuit, violations of an internal body camera policy have not provided a basis for suppression, much less dismissal.  "A violation by the government of its internal operating procedures, on its own, does not create a basis for suppressing [statements]."  *United States v. Luck*, 852 F.3d 615, 623-24 (6th Cir. 2017) (citation omitted) (finding no due process violation where the government failed to record the defendant's statements, in violation of Department of Justice policy encouraging the recording of some interrogations.)

In this matter, there were two different body camera recordings capturing two interviews with the Defendant's girlfriend and a full recording of her interview by detectives at the police station.  There is a body camera recording of interviews with 4 different witnesses taken the following day.  The protective sweep and search were not recorded on body cameras; however, photographs were taken depicting the scene and location of all seized items.

The Defendant has provided only general allegations that potentially helpful information has been lost.  The Defendant has not provided any evidence of bad faith on the part of the police officers in not activating their body cameras for the entire duration of this incident.  The failure to activate a body camera and any potential resulting violation of an internal policy is not a basis for suppressing evidence, much less dismissing an indictment.  For all these reasons, the government requests this Honorable Court deny his motion to dismiss.

Finally, the Defendant makes an allegation in his motion to dismiss that law enforcement has failed to disclose evidence and has even tampered with evidence related to this incident.  (R. 43: Motion to Suppress, PageID 264).  This allegation is made without evidence and is contrary to the ongoing discovery process during which Defendant has stated in motions to continue that "[t]he defense has on multiple occasions requested additional supplemental discovery items from the government.  The government has timely responded to all requests and gathered additional items requested by the defense."  (See R. 40: Motion to Continue, PageID 183).  There has been no prior allegation made to the government by the Defendant that law enforcement has tampered with evidence.

The discovery in this case has been quite extensive.  In addition to the initial discovery production, the government has supplemented discovery on eight (8) separate occasions.  The Defendant made numerous requests, to which the government promptly responded.  At no point

33

has the Defendant ever claimed that the discovery had been tampered with nor has the Defendant filed a motion to compel any discovery that he says has not been provided.

## III.    CONCLUSION

For the foregoing reasons the government respectfully requests that this Honorable Court deny the Defendant's motions to suppress and to dismiss without a hearing.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By:    /s/ Brian S. Deckert
Brian S. Deckert (OH: 0071220)
Matthew W. Shepherd (OH: 0074056)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3873/3859
(216) 685-2378 (facsimile)
Brian.Deckert@usdoj.gov
Matthew.Shepherd@usdoj.gov