IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR535 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL KOVACIC, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION TO DISMISS |

Now comes the United States of America, by and through its counsel, Carol M. Skutnik, Acting United States Attorney, Brian S. Deckert and Matthew Shepherd, Assistant United States Attorneys, and hereby responds in opposition to Defendant Daniel Kovacic's ("Kovacic" or "Defendant") Motion to Dismiss. (R. 41: Motion to Dismiss, PageID 186-96). Kovacic's motion should be denied because 18 U.S.C. § 922(g)(1) does not violate the commerce clause and is not facially unconstitutional or unconstitutional as applied to Kovacic. Further, 18 U.S.C. § 922(g)(1)'s prohibition on possessing firearms applies to Kovacic because his civil rights have not been restored such that he may again possess firearms.

I.   BACKGROUND

   A.   Facts

On August 17, 2023, at approximately 4:10 p.m., the Wickliffe, Ohio police department received multiple 911 calls regarding gunshots from residents living in the area of the 1500 block of Ridgewick Drive. Wickliffe police responded and spoke to multiple residents who reported hearing gunshots. One resident stated that he observed a white male exit from 1548 Ridgewick Drive and fire at least three shots into the air and then re-enter the residence. Another resident stated that approximately two weeks earlier, he and Kovacic argued over the volume of

Kovacic's music. Kovacic pulled out a pistol, "racked the slide," and pointed it at the neighbor's chest. The neighbor described that a laser attached to the firearm was centered on his chest.

Approximately 20 minutes after police arrived, a woman exited 1548 Ridgewick Drive and the police detained her. The woman informed police that she was the girlfriend of Kovacic and that she left him asleep on the couch. She stated that she had arrived at the residence at approximately 4:00 pm and found Kovacic on the phone with his boss. At that time, Kovacic's speech was slurred and there were open alcoholic beverages near him. She described Kovacic as "agitated" and that he had possibly just lost his job. The woman confirmed that Kovacic used alcohol and steroids and had been suffering from increasing paranoia over the last couple of weeks. She denied hearing any gunshots while inside the residence but did admit to seeing a small green handgun tucked into the couch while she was cleaning approximately two weeks earlier.

While police were speaking to the woman, Kovacic's mother called her phone. The police spoke to Kovacic's mother who stated that Kovacic was undergoing some sort of mental crisis and abusing narcotics. Kovacic's mother stated that on this date Kovacic had sent her several disturbing text messages in which he threatened to kill "the enemies of the white race." Kovacic's father called Wickliffe police and stated that approximately one week earlier, he requested Kovacic take a drug test, which came back positive for cocaine. Police also contacted Kovacic's boss, who stated that he had terminated Kovacic on this date after a client reported that the defendant had been intoxicated and unprofessional. Kovacic's boss provided the text communications with Kovacic to the police.

The Emergency Response Team (ERT) responded on scene and unsuccessfully attempted to make contact with Kovacic for multiple hours by calling and texting his cell phone and using a

public address system. Residents in the neighborhood were evacuated and the police established a perimeter around Kovacic's residence. Several hours after the standoff began, officers observed Kovacic in the upstairs window and ordered him to come to the front door; he complied and was taken into custody without incident. ERT performed a protective sweep of the residence following Kovacic's surrender. Police obtained a search warrant for the residence and seized a tan/green Sig Sauer, Model P238, .380 caliber handgun with laser attachment, serial number 27B206165, loaded with 6 rounds of .380 ammunition with one round in the chamber. Officers located the firearm tucked into the cushions of the couch in the living room where Kovacic's girlfriend had observed him sitting. Additionally, police seized a magazine loaded with 7 rounds of 9mm ammunition from inside of a pair of white athletic shorts in the living room, and also found a holster on the armrest of the couch in which the firearm with attachment could fit. Police located a Sig Sauer firearm box bearing the matching serial number 27B206165 in Kovacic's bedroom, and discovered 32 rounds of 9mm ammunition and 1 round of .380 ammunition scattered in and around the firearm box. Outside of the residence, officers found two spent .380 caliber shell casings. Finally, police seized a holster from underneath the bed which would fit the Sig Sauer without the attachment. Police discovered a safe inside the room but were unable to access it. No firearm capable of firing 9mm ammunition was recovered from the accessible areas of the residence.

     Special Agent John Laurito of the Bureau of Alcohol, Tobacco, Firearms, and Explosives examined the Sig Sauer firearm and 13 rounds of Sellier and Bellot brand 9 mm ammunition that were recovered from Kovacic's apartment. Special Agent Laurito determined that the firearm was manufactured in New Hampshire and the ammunition was manufactured in the Czech Republic. *See* Exhibit 1, ATF Nexus Report.

The Sig Sauer was tested for the presence of DNA and compared to a known DNA standard of Kovacic. The Lake County Crime Laboratory discovered a mixture of DNA on the firearm with a minimum of three contributors. Kovacic cannot be excluded as a contributor to the mixture, and it is 64.3 trillion times more likely that Kovacic's DNA is part of the mixture than anyone else.

### B. Criminal History

Kovacic's criminal history includes convictions for multiple felony offenses, that is, crimes that are punishable by imprisonment for a term exceeding one year: two counts of Felonious Assault, a felony of the second degree, and Tampering with Evidence, a felony of the third degree, on or about May 24, 2010, in Case Number 09-CR-819, in the Lake County Court of Common Pleas; and Assault on a Peace Officer, a felony of the fourth degree, on or about February 4, 2010, in Case Number 09-CR-546, in the Lake County Court of Common Pleas.

#### 1. Case No. 09-CR-819

On April 23, 2010, Kovacic was convicted after a jury trial of two counts of Felonious Assault and one count of Tampering with Evidence in Case No. 09-CR-819. *See* Exhibit 2, Judgment Entry. The convictions resulted from Kovacic stabbing an individual multiple times in the face, head, and arm using a folding knife during an altercation at his apartment on November 23, 2009. *See State v. Kovacic*, 969 N.E.2d 322, 326 (Ohio 11th Dist. Ct. App. 2012). Although Kovacic claimed self-defense at trial, the appellate court reviewing his conviction found that the evidence showed that Kovacic "was directly responsible for the situation that gave rise to the altercation," that Kovacic "hid in the common area of the building and waited for the victim to arrive," and that "when the victim came through the door, [Kovacic] engaged him in physical combat." *Id.* at 329. On May 24, 2010, Kovacic was sentenced to serve a total sentence of 10

years in prison. *See* Exhibit 3, Judgment Entry of Sentence. Kovacic was granted judicial release from prison and ordered to serve three years on community control on January 23, 2020. *See* Exhibit 4, Judgment Entry of Judicial Release. On February 1, 2023, the court formally released Kovacic from community control and ordered "that said defendant be restored to the civil rights of citizenship previously removed under R.C. 2961.01." *See* Exhibit 5, Judgment Entry.

      **2.    Case No. 09-CR-546**

Kovacic was convicted of Assault on a Peace Officer in Case No. 09-CR-546 after a jury trial on January 6, 2010. *See* Exhibit 6, Jury Verdict. In this case, Kovacic got into a fight at a local church festival. When police responded to the fight, Kovacic punched one of the police officers in the head. *See State v. Kovacic*, No. 2010-L-018, 2010 WL 4722443, at *1 (Ohio 11th Dist. Ct. App. Nov. 19, 2010). Kovacic was sentenced on February 4, 2010, to 15 months in prison. *See* Exhibit 7, Judgment Entry of Sentence. An order restoring defendant's civil rights was not issued in this case.

   **C.    Procedural History**

On September 20, 2023, Kovacic was charged in a one count indictment in the Northern District of Ohio. (R. 1: Indictment, PageID 1-2). Specifically, he was charged with being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.G. § 922(g)(1) and 924(a)(8).

Presently before the Court is Kovacic's motion to dismiss, filed on December 5, 2024. (R. 43: Motion to Suppress, PageID 229-66). Kovacic argues that the indictment should be dismissed because 18 U.S.C. § 922(g)(1) exceeds Congress' power under the Commerce Clause of the Constitution; because 18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied

5

under the Second Amendment to the Constitution; and because Kovacic's civil rights were restored for one of his felony convictions. These arguments are without merit, and Kovacic's motion should be denied.

## II. ARGUMENT

### A. 18 U.S.C. § 922(g)(1) does not violate the Commerce Clause.

Kovacic first argues that 18 U.S.C. § 922(g)(1) is unconstitutional because it violates Congress' power under the Commerce Clause of the Constitution. This claim should be rejected pursuant to binding Sixth Circuit precedent.

Section 922(g)(1) does not violate the Commerce Clause because it is a proper exercise of Congress' power to regulate interstate commerce.[1] As the Sixth Circuit has explained, Section 922(g)(1) includes "a requirement for a gun to have moved in or affect interstate commerce to sustain a conviction, providing the very jurisdictional hook necessary under the commerce clause." *United States v. Vaughn*, No. 23-5790, 2024 WL 4615853, *3 (6th Cir. Oct. 30, 2024). Based on this "jurisdictional hook," the Sixth Circuit has explicitly found that Section 922(g)(1) is constitutional. *See United States v. Chesney*, 86 F.3d 564, 570 (6th Cir. 1996) ("In accordance with the prior decisions of the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, we conclude that § 922(g)(1) is constitutional on its face under the Commerce Clause analysis used by the Supreme Court in *Lopez*."); *United States v. Turner*, 77 F.3d 887, 889 (6th Cir. 1996) ("Accordingly, we hold that § 922(g)(1) represents a valid exercise of legislative power under the Commerce Clause."); *United States v. Henry*, 429 F.3d 603, 619-20 (6th Cir. 2005); *United States v. Thompson*, 361 F.3d 918, 923 (6th Cir. 2004). This

---

[1] The Commerce Clause delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3.

precedent upholding the power of Congress to enact Section 922(g)(1) under the commerce clause remains binding. *See Vaughn*, 2024 WL 4615853 at *3 ("Thus, following our **binding precedent**, we again must hold that § 922(g)(1) is facially constitutional.") (emphasis added).

Kovacic makes no mention of this binding Sixth Circuit precedent. He cites to *United States v. Lopez*, 514 U.S. 549 (1995) in support of his motion but fails to note that the Sixth Circuit already considered the impact of the Lopez decision and still upheld the constitutionality of Section 922(g)(1). *See, i.e., Chesney*, 86 F.3d at 570. Thus, according to binding Sixth Circuit precedent, Section 922(g)(1) is a constitutional exercise of Congress' power under the Commerce Clause.

In addition to arguing that Section 922(g)(1) is unconstitutional on its face, Kovacic also complains that it is unconstitutional as applied to him because "the possession alleged in the Indictment here in no way affected interstate commerce and is already regulated by the State of Ohio." (R. 41, Motion to Dismiss, PageID 190). This argument is also controlled by the Sixth Circuit's binding precedent, which provides that evidence that a defendant possessed a firearm which had previously been transported in interstate commerce satisfies the requirements of the Commerce Clause. *See Chesney*, 86 F.3d at 572 ("The fact that Chesney possessed a gun that previously had moved in interstate commerce provides a sufficient nexus between Chesney's conduct and interstate commerce to allow Congress to regulate Chesney's conduct pursuant to the Commerce Clause."); *Vaughn*, 2024 WL 4615853 at * 4 (explaining that "our binding precedent holds that Congress appropriately regulates under the commerce clause even if the underlying crime did not directly involve interstate commerce" and rejecting as-applied commerce clause challenge because "the firearm was not manufactured in Tennessee" meaning that "it, of course, had to cross state lines to reach [the defendant]").

Here, Kovacic is charged with possessing a "Sig Sauer, Model P238, .380 caliber pistol bearing serial number 27B206165 and ammunition, said firearm and ammunition having been shipped and transported in interstate commerce." (R. 1, Indictment, PageID 1). According to analysis by a Bureau of Alcohol, Tobacco, Firearms, and Explosives expert, the Sig Sauer pistol was manufactured in New Hampshire and the ammunition at issue, 13 rounds of Sellier and Bellot brand ammunition, was manufactured in the Czech Republic. *See* Exhibit 1, ATF Nexus Report. Thus, the firearm and ammunition Kovacic possessed were manufactured outside of Ohio, meaning they were transported in interstate commerce prior to his possession of them. This is sufficient under binding Sixth Circuit precedent to meet the requirements of the Commerce Clause. Thus, Section 922(g)(1) does not violate the Commerce Clause as applied to Kovacic.

**B.    18 U.S.C. § 922(g)(1) is not unconstitutional as applied to Kovacic.**

Kovacic next challenges the constitutionality of Section 922(g)(1) under the Second Amendment as applied to him, arguing that "[t]he United States bears the burden of affirmatively proving that 18 U.S.C. § 922(g)(1) is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" pursuant to *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

In *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), the Sixth Circuit considered whether Section 922(g)(1) violated the Second Amendment. Although the Sixth Circuit found that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," and rejected facial challenges to Section 922(g)(1), the Sixth Circuit also

8

found that it "might be susceptible to an as-applied challenge in certain cases."[2] *Williams*, 113 F.4th at 657. Kovacic makes such an as-applied challenge.

In making an as-applied challenge to the constitutionality of Section 922(g)(1), the burden is on Kovacic to show that he is not dangerous. *Id.* at 662. When considering such a challenge, the court "must focus on each individual's specific characteristics," which "necessarily requires considering the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1)." *Id.* at 657-58. The Sixth Circuit has divided prior criminal offenses into three broad categories for determining dangerousness. "The first such group is crimes against the person," which includes "dangerous and violent crimes like murder, rape, assault, and robbery." *Id.* at 658. "Offenses in this category speak directly to whether an individual is dangerous." *Id.* The Sixth Circuit made clear that offenders with a history of committing such crimes against the person are likely "dangerous" offenders who can be prohibited from possessing firearms, explaining that "even if the individual [who committed crimes against the person] was given the opportunity to show they are not dangerous, the burden

---

[2] While the Sixth Circuit's determination in *Williams* that as-applied challenges are possible is binding precedent, the government continues to believe that the fact that Section 922(g)(1) is constitutional on its face ends the matter, and that no as-applied challenges should be available. Before *Bruen*, the Sixth Circuit upheld Section 922(g)(1)'s constitutionality even as applied to non-violent felons. *Stimmel v. Sessions*, 879 F.3d 198, 211 (6th Cir. 2018) (discussing *United States v. Carey,* 602 F.3d 738, 741 (6th Cir. 2010)). Applying *Bruen's* methodology should have produced the same result. After all, our Nation's history of firearm regulation establishes that "[l]egislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed," and that there historically was "no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024) (emphasis added). The government thus preserves this argument in case this matter reaches either the en banc Sixth Circuit or the Supreme Court. But the government acknowledges that *Williams* disagreed with this analysis and held that Section 922(g)(1) "might be susceptible to an as-applied challenge in certain cases." 113 F.4th at 657.

would be extremely heavy," and concluding that "there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.* at 658.

The second category of crimes are those that "while not strictly crimes against the person, may nonetheless pose a significant threat of danger. These crimes do not always pose a threat of violence against a particular person. A prime example is drug trafficking." *Id.* at 659. Similar to crimes against the person, the Sixth Circuit concluded, "Ultimately, most of these crimes put someone's safety at risk, and thus, justify a finding of danger." *Id.*

The third category of crimes are those not directed against the person and that do not cause physical harm, such as mail fraud or making false statement. *Id.* For many of these crimes, the Sixth Circuit concluded, "[W]e trust district courts will have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*

Kovacic's prior history includes convictions in the first category of crimes—offenses against the person. He has felony convictions for Felonious Assault and for Assault on a Peace Officer. In Case No. 09-CR-819 Kovacic was convicted of two counts of Felonious Assault for stabbing someone multiple times in the face, head, and arm after lying in wait for him in his apartment building. He was sentenced to serve 10 years in prison as a result. And in Case No. 09-CR-546 he assaulted a police officer by punching him in the head when the officer responded to a fight involving Kovacic at a church festival. Someone who stabs a victim multiple times in the head, face, and arm with a knife and who assaults a police officer in public at a church festival is a dangerous individual. Kovacic's dangerousness is "self-evident" from these offenses. *See Id.* at 660 ("And in many instances—prior murders, rapes, or ***assaults***—the dangerousness will be self-evident.") (emphasis added). *See United States v. Harris*, No. 24-45-

10

DLB-CJS, 2024 WL 5090457 at * 3 (E.D.Ky. Dec. 12, 2024) (rejecting as-applied challenge to Section 922(g)(1) prosecution because "Defendant's prior Ohio conviction for felonious assault shows that she is dangerous under *Williams*"); *United States v. Barber*, No. 3:22-cr-511, 2024 WL 4443763 at * 2 (N.D.Oh. Oct. 8, 2024) (rejecting as-applied challenge where defendant "offers no reason why his prior conviction for felonious assault does not render him sufficiently 'dangerous' under *Williams*").

Faced with this history of committing offenses against the persons of others, Kovacic fails to meet his burden to show he is not dangerous. He offers only that he "does not have any prior convictions for gun violence" and that on February 1, 2023, the judge in one of his cases released him from community control and "restored his civil rights of citizenship previously removed under R.C. 2961.01." This is far short of meeting his burden to show he is not dangerous. Dangerousness is not dependent on prior crimes involving guns. As his victim learned, Kovacic was just as dangerous with a knife as with a gun. And as explained further below, the order restoring his civil rights did not restore his right to possess a firearm and did nothing more than memorialize the restoration of rights that under Ohio law that occurred because he completed his term of post-release control.

Kovacic's prior convictions for crimes against the person—felonious assault and assault on a peace officer—show that he is among the class of dangerous persons who can be disarmed consistent with the Second Amendment. Kovacic has failed to meet his burden to show that he is not dangerous. Therefore, his as-applied challenge fails.

11

### C. 18 U.S.C. § 922(g)(1) is not facially unconstitutional.

Kovacic also argues that Section 922(g)(1) is facially unconstitutional under the Second Amendment. This argument should also be rejected because binding Sixth Circuit precedent holds that Section 922(g)(1) is constitutional on its face.

A defendant raising a facial challenge must show that there is no set of circumstances under which the statute is constitutional. *See United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024). The Sixth Circuit has recently held that Section 922(g)(1) "is not susceptible to a facial challenge." *Williams*, 113 F.4th at 657. This is so because a "facial challenge will fail if [Section] 922(g)(1) is constitutional in even just one of its applications." *Id.* at 643. The Sixth Circuit determined that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," and that "Section 922(g)(1) is an attempt to do just that." Further, "Because … most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge." *Id.* at 657.

The Sixth Circuit has relied on *Williams* to repeatedly reject facial challenges to Section 922(g)(1). *See, e.g., United States v. Hurdle*, No. 24-5067, 2024 WL 4839064, at *1 (6th Cir. Nov. 20, 2024); *Vaughn*, 2024 WL 4615853, at *2; *United States v. Parham*, 119 F.4th 488, 495-96 (6th Cir. 2024); *United States v. Dorsey*, No. 24-5129, 2024 WL 4250319, at *1 (6th Cir. Sept. 20, 2024); *United States v. Partee*, No. 24-5114, 2024 WL 4224982, at *1 (6th Cir. Sept. 18, 2024). This Sixth Circuit precedent forecloses Kovacic's facial challenge to Section 922(g)(1), and this argument must be rejected.

### D. Kovacic's right to possess a firearm has not been restored.

Finally, Kovacic argues that "at the time of the offense on August 17, 2023, [he] had been restored to the civil rights of citizenship previously removed under R.C. 2961.01," and that

"his prior record has been expunged and/or pardoned." (R. 41, Motion to Dismiss, PageID 193). Kovacic then cites in a footnote what is known as the "unless clause" of 18 U.S.C. § 921(a)(20), which provides: "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Thus, it appears that Kovacic is also arguing that his prior felony convictions do not qualify as prohibiting felony convictions. This argument is meritless because Kovacic remains prohibited from possessing a firearm under federal law.

Kovacic's felony convictions were not expunged or pardoned. Only the Governor of Ohio could have pardoned Kovacic, and he has provided no evidence that he has been pardoned. Kovacic has also shown no evidence that his convictions were expunged. In fact, his convictions for Felonious Assault and Assault on a Police Officer are not even eligible for expungement because they are crimes of violence. *See* O.R.C. § 2953.32(A)(1)(b) (excluding from eligibility for expungement "Convictions of a felony offense of violence that is not a sexually oriented offense"); O.R.C. § 2901.01(A)(9)(a) (defining "offense of violence" to include violations of O.R.C. § 2903.11 (felonious assault) and § 2903.13 (assault)). In addition, Kovacic's Felonious Assault convictions are also ineligible for expungement because they are Felonies of the Second Degree. *See* O.R.C. § 2953.32(A)(1)(e) (excluding from eligibility for expungement "Convictions of a felony of the first or second degree").

As noted by Kovacic, however, certain of his civil rights were restored. Under Ohio law, individuals convicted of felony offenses lose the right "to be an elector or juror or to hold an office of honor, trust, or profit." *See* O.R.C. § 2961.01(A)(1). These rights are restored as a

13

matter of law upon completion of a defendant's sentence. First, the right to vote is restored automatically upon completion of a prison sentence. *See* O.R.C. § 2961.01(A)(2). Second, with some exceptions, prisoners who have served their complete prison terms and been "granted a final release or termination of post-release control by the adult parole authority" shall "be restored to the rights and privileges forfeited by a conviction." *See* O.R.C. § 2967.16(C).

Importantly, the rights that are restored do not include the right to possess a firearm under Ohio law. Ohio statute prohibits individuals convicted of certain offenses, including "any felony offense of violence," from acquiring, having, carrying, or using any firearm. *See* O.R.C. § 2923.13(A)(2). Also, restoration of the right to possess a firearm cannot be based on "mere completion, termination, or expiration of a sentence imposed as a result of a criminal conviction." *See* O.R.C. § 2923.13(C). Thus, the right to possess a firearm is not automatically restored along with other civil rights merely by completion of a criminal sentence.

In Kovacic's case, he remains prohibited from possessing a firearm under Ohio law because of his prior convictions for felony crimes of violence. His felony convictions for Felonious Assault in violation of O.R.C. §§ 2903.11(A)(2) and 2903.11(A)(1) in Case No. 09-CR-819 and Assault on a Peace Officer in violation of O.R.C. § 2903.13(A) are crimes of violence pursuant to O.R.C. § 2901.01(A)(9)(a). As such, Kovavic is prohibited from possessing a firearm pursuant to O.R.C. § 2923.13(A)(2). Restoration of the right to possess a firearm requires more than just Kovacic's completion of his sentence, and the court order he cites specifically references only the restoration of civil rights suspended by O.R.C. § 2961.01, which does not include the right to possess a firearm. Further, Kovacic only provides an order restoring his rights in Case No. 09-CR-819, not in Case No. 09-CR-546. Therefore, Kovacic remains prohibited from possessing a firearm under Ohio law.

Ohio's continuing statutory prohibition on Kovacic's possession of firearms satisfies the "unless clause" of 18 U.S.C. § 921(a)(20), meaning that his "restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The Sixth Circuit has held that when determining whether the "unless clause" applies, courts must look to the whole of state law and not just to the specific document that restores a defendant's civil rights to determine if the restoration of rights "expressly provides that the person may not ship, transport, possess, or receive firearms." *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990) ("Hence, if a 'convicted felon' has his civil rights restored by operation of state law, with or without a certificate or order documenting the event, we must look to the whole of state law of the state of conviction to determine whether the 'convicted felon' is entitled to vote, hold public office and serve on a jury and also whether the 'convicted felon' is entitled to exercise the privileges of shipping, transporting, possessing or receiving a firearm."). Thus, in cases where a defendant has their rights restored, but state law continues to prohibit them from possessing firearms, the "unless clause" applies and the defendant remains prohibited from possessing firearms under Section 922(g)(1). *Id.* at 550. *See also United States v. Clegg*, 654 F.App'x 686 (6th Cir. 2016); *United States v. Ormsby*, 252 F.3d 844, 849-50 (6th Cir. 2001); *United States v. Zellars,* 334 F.App'x. 742, 744-45 (6th Cir. 2009). Thus, Kovacic remains subject to Section 922(g)(1)'s prohibition on possessing firearms and ammunition, even though his other civil rights have been restored.

### III. CONCLUSION

For the foregoing reasons the government respectfully requests that this Honorable Court deny the Defendant's motion to dismiss.

                              Respectfully submitted,

                              CAROL M. SKUTNIK
                              Acting United States Attorney

By:  /s/ Matthew W. Shepherd
        Matthew W. Shepherd (OH: 0074056)
        Brian S. Deckert (OH: 0071220)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3859/3873
        (216) 685-2378 (facsimile)
        Matthew.Shepherd@usdoj.gov
        Brian.Deckert@usdoj.gov