# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:23CV535** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DANIEL KOVACIC,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #41) of Defendant

Daniel Kovacic to Dismiss the Indictment.  For the following reasons, the Motion is denied.

## I. BACKGROUND

On September 20, 2023, Defendant was named in a Single-Count Indictment in the

Northern District of Ohio.  The Indictment alleges that on August 17, 2023, Defendant possessed

a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(8).

Specifically, the Indictment states:

On or about August 17, 2023, in the Northern District of Ohio, Eastern Division,
Defendant DANIEL KOVACIC, knowing he had previously been convicted of
crimes punishable by imprisonment for a term exceeding one year, those being:
Felonious Assault, a felony of the second degree, on or about May 24, 2010, in
Case Number 09-CR-819, in the Lake County Court of Common Pleas; and
Assault on a Peace Officer, a felony of the fourth degree, on or about
February 4, 2010, in Case Number 09-CR-546, in the Lake County Court of
Common Pleas, knowingly possessed in and affecting interstate commerce
a firearm, to wit: a Sig Sauer, Model P238, .380 caliber pistol bearing serial
number 27B206165 and ammunition, said firearm and ammunition having
been shipped and transported in interstate commerce, in violation of Title 18,
United States Code, Sections 922(g)(l) and 924(a)(8).

Defendant was taken into federal custody on September 27, 2023, and he remains so detained.

On December 5, 2024, Defendant filed the instant Motion (ECF DKT #41) to Dismiss the Indictment.  In the Motion, Defendant challenges the constitutionality of 18 U.S.C. § 922(g)(1) under the Second Amendment, as well as facially and as applied to him under the Commerce Clause of the United States Constitution.  Defendant contends that he is a non-dangerous individual who may not be constitutionally disarmed and that the activity underlying his § 922(g)(1) charge does not involve interstate commerce.

The Government has filed a timely Response Brief (ECF DKT #53) and Defendant has submitted his Reply Brief (ECF DKT #59).

## II. LAW AND ANALYSIS

### Commerce Clause

The powers of the United States Congress are limited to those powers explicitly delegated to it by the text of the United States Constitution.  *United States v. Lechner*, 806 F.3d 869, 876 (6th Cir. 2015).  One such power is found in the Commerce Clause which gives Congress the authority "[t]o regulate Commerce with foreign Nations, and among the several states[.]"  U.S. Const. art. I, § 8, cl. 3.

### Second Amendment

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

**18 U.S.C. § 922(g)(1)**

> The relevant criminal statute recites in part:

> It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**Constitutional Challenges**

In *Mathews v. Ohio Public Employees Retirement System,* 91 F.Supp.3d 989, 996

(S.D.Ohio 2015), the district court discussed constitutional challenges to a statute:

> A court may hold a statute unconstitutional either because it is invalid "on its face" or because it is unconstitutional "as applied" to a particular set of circumstances. Each holding carries an important difference in terms of outcome:  If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances. Traditionally, [the] burden in an as-applied challenge is different from that in a facial challenge.  In an as-applied challenge, [the challenging party] contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Ada v. Guam Soc'y of Obstetricians and Gynecologists*, 506 U.S. 1011, 1012, 113 S.Ct. 633, 634, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting), denying cert. to 962 F.2d 1366 (9th Cir.1992).

"Facial challenges are disfavored ...." *Washington State Grange v. Washington State*

*Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008).

"In contrast to an as-applied challenge, which argues that a law is unconstitutional as

enforced against plaintiffs before a court, a facial challenge is not an attempt to invalidate the

law in a discrete setting but an effort to leave nothing standing." *Speet v. Schuette*, 726 F.3d 867

(6th Cir. 2013) at headnote 2.

[A]n as-applied challenge tests only whether the contested "law is unconstitutional as

enforced against the [party] before the court" based on the discrete facts in the case.  *United States v. Hostettler*, 2024 WL 1548982, *3 (N.D.Ohio, Eastern Division, Apr.10, 2024), citing *Speet*, 726 F.3d at 872.

**Motion to Dismiss**

Pursuant to Fed.R.Crim.P. 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  A defendant may move to dismiss an indictment for "failure to state an offense" when the "statute apparently creating the offense is unconstitutional."  *United States v. Rathburn*, 771 F. App'x 614, 623 n.8 (6th Cir. 2019) (quoting *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973)).

Defendant argues that § 922(g)(1) infringes on his Second Amendment rights; and further asserts that he is a non-dangerous individual who may not be constitutionally disarmed.  The Second Amendment right "to keep and bear arms" belongs to all Americans.  *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008).   Moreover, felons are among "the people" protected by the Second Amendment.  *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024).  The two felony convictions listed in the Indictment did not arise out of gun violence.

On April 23, 2010, Defendant was convicted after a jury trial in Lake County Common Pleas Court of two counts of Felonious Assault for stabbing an individual multiple time in the face, head and arm.  (Case No. 09-CR-819).  Defendant was sentenced to serve 10 years in prison.  On January 23, 2020, Defendant was granted judicial release and was ordered to serve 3 years on community control.  On February 1, 2023, the Lake County Common Please Court released Defendant from community control supervision and restored the civil rights of citizenship previously removed under R.C. § 2961.01, to wit:  "to be an elector or juror or to

hold an office of honor, trust or profit."

On January 6, 2010, Defendant was convicted after a jury trial in Lake County Common Pleas Court of Assault on a Peace Officer for punching a police officer in the head at a church festival.  (Case No. 09-CR-546).  Defendant was sentenced to 15 months in prison.  There has been no order restoring Defendant's civil rights in this instance.

Defendant insists that he is not a dangerous individual in the context of § 922(g)(1) as exemplified by his life and accomplishments.  While incarcerated, Defendant obtained an Associate's Degree *cum laude* on May 4, 2018, from Ashland University and a Bachelor's Degree *magna cum laude* on August 22, 2019, from Ashland University.  Prior to the within offense, Defendant was gainfully employed at the same company for approximately 3 years. Defendant claims to have strong ties to his community; and  has been an active member of the Wickliffe Chapter of the Knights of Columbus since the Spring of 2021.

Defendant asserts that his conduct since his youthful offenses, coupled with the judicial restoration of his civil rights, show that he should not be deemed a dangerous person deserving to be disarmed.

Although felons are among "the people" protected by the Second Amendment, "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Williams*, 113 F.4th at 657.

"In broad terms, governments have long divided criminal offenses into a few classes. The first such group is crimes against the person.  See, e.g., *Borden v. United States*, 593 U.S. 420, 454, 141 S.Ct. 1817, 210 L.Ed.2d 63 (2021) (Kavanaugh, J., dissenting).  This historical category was filled with dangerous and violent crimes like murder, rape, assault, and robbery.

*Offense Against the Person*, Black's Law Dictionary (12th ed. 2024). . . . Offenses in this category speak directly to whether an individual is dangerous." *Williams*, 113 F.4th at 658.

The Sixth Circuit continues:  "[T]here is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id*. Furthermore, "courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness." *Id.* at  n.12.

Even acknowledging the restoration of Defendant's civil rights in one case, Defendant has been convicted of "crimes against the person."  The egregious facts of Defendant's conviction in Case No. 09-CR-819 and the assault of a police officer in 09-CR-546 which offense has not been pardoned nor expunged, persuade the Court that Defendant may pose a threat to the safety of others.

In the face of such compelling evidence of crimes against the person based on two assaults, one with a knife and one with bare fists, Defendant fails to satisfy his heavy burden; and his educational accomplishments and community work do not provide sufficient evidence to convince the Court that he is not dangerous.

Therefore, Defendant falls into the category of persons who may be constitutionally disarmed and 18 U.S.C. § 922(g)(1) does not infringe Defendant's Second Amendment rights.

Defendant also challenges the constitutionality of § 922(g)(1), facially and as-applied to him under the Commerce Clause.  He argues the statute is an overreach of the limited powers conferred on Congress "[t]o regulate Commerce with foreign Nations, and among the several states[.]" U.S. Const. art. I, § 8, cl. 3.

In *Williams*, the Sixth Circuit held that § 922(g)(1) is constitutional on its face.  113 F.4th

at 662-663.  In *United States v. Chesney*, 86 F.3d 564 (6th Cir. 1996), the Sixth Circuit panel

noted that "[c]ourts uniformly have rejected [commerce clause] facial challenges to § 922(g)(1)

because § 922(g)(1) contains a jurisdictional provision that requires the government to prove that

the firearm was possessed 'in or affecting commerce.' "  *Id.* at 568.  Most recently, in *United*

*States v. Vaughn*, Case No. 23-5790, 2024 WL 4615853 *3 (6th Cir. Oct. 30, 2024), the

appellate court cited *Chesney* and found that "§ 922(g)(1) makes it a requirement for a gun to

have moved in or affect interstate commerce to sustain a conviction, providing the very

jurisdictional hook necessary under the commerce clause."

The Court is bound by *stare decisis* to adhere to published Sixth Circuit precedent which

has not been reversed by an *en banc* opinion of that appellate court nor overruled by the U.S.

Supreme Court.  Thus, the Court finds no merit in Defendant's facial challenge; and in line with

the binding precedent of *Chesney* and *Williams*, the Court determines that § 922(g)(1) is facially

constitutional.

Defendant challenges the constitutionality of § 922(g)(1) as applied to him specifically in

this set of facts.  Defendant insists that the statute should be *narrowed* to acts of possession of

firearms or ammunition actually in or affecting interstate commerce — that is, during a bank

robbery or as part of a sale or trade of a gun or while traveling in a vehicle across state lines.

Then, possession of firearms in a private home or on private property as is alleged here would

not violate the federal statute.

On September 19, 2023, Special Agent John Laurito of the Bureau of Alcohol, Tobacco,

Firearms and Explosives examined the Sig Sauer firearm and 13 rounds of Sellier and Bellot

brand 9mm ammunition recovered from Defendant's apartment.  Special Agent Laurito

concluded that the firearm was manufactured in New Hampshire and the ammunition was manufactured in the Czech Republic.  (ECF DKT #53-1).

Once again, binding precedent holds that § 922(g)(1) satisfies constitutional inquiry. "[I]t requires a minimal nexus that the firearm have [sic] been, at some time, in interstate commerce ... If the weapon previously moved in interstate commerce, which it did here, the commerce clause has been satisfied.  See, e.g., *United States v. Henry*, 429 F.3d 603, 619 (6th Cir. 2005) ("We explicitly held post-*Lopez* that a § 922(g)(1) conviction comports with the Commerce Clause so long as the defendant 'possessed a gun that previously had moved in interstate commerce.' " (quoting *Chesney*, 86 F.3d at 572))."  *Vaughn*, 2024 WL 4615853 *4.

To Defendant's argument that the possession alleged in the instant Indictment "in no way affected interstate commerce," "our binding precedent holds that Congress appropriately regulates under the commerce clause even if the underlying crime did not directly involve interstate commerce."  *United States v. Napier*, 233 F.3d 394, 400-01 (6th Cir. 2000). Compelled by binding authority in this Circuit, the Court declines Defendant's invitation to narrow the application of § 922(g)(1).

Therefore, the Court holds that 18 U.S.C. § 922(g)(1) is constitutional on its face and as applied to Defendant under the Commerce Clause.

### III. CONCLUSION

Based upon historical and binding judicial precedents, the Court rejects Defendant's constitutional arguments.  First, Defendant fails to satisfy the heavy burden of proving he is not that dangerous individual who deserves to be disarmed under the Second Amendment.  Second, because § 922(g)(1) contains within it a jurisdictional "hook" that any prohibited firearm must

move in or affect interstate commerce and Defendant's weapon and ammunition were manufactured outside of Ohio and in New Hampshire and the Czech Republic, § 922(g)(1) is both facially constitutional and constitutional as applied to Defendant under the Commerce Clause of the United States Constitution.

Therefore, the Motion (ECF DKT #41) of Defendant Daniel Kovacic to Dismiss the Indictment is denied.

**IT IS SO ORDERED.**

**DATE: 3/12/2025**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**