# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:23CR535** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DANIEL KOVACIC,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #42) of Defendant Daniel Kovacic to Suppress Search of Black Samsung S23 Cellular Phone.  Defendant argues that the September 27, 2023 Search Warrant lacked probable cause; violated his Fourth Amendment rights; contained false and misleading information; was "bare-bones;" and was unlawful fruit of the illegal search of 1548 Ridgewick Drive in Wickliffe, Ohio on August 17, 2023, as argued in a separate Motion to Suppress.  In addition, Defendant requests an evidentiary hearing or a *Franks* hearing to address any false statements in the Affidavit.  For the following reasons, the Court DENIES Defendant's Motion in its entirety.

## I. BACKGROUND

On August 17, 2023, the Wickliffe Police Department received a number of 911 calls reporting gunshots in the area of Ridgewick Drive, Wickliffe, Ohio.  Upon arriving at the scene, officers interviewed neighbors and determined that a man exited 1548 Ridgewick Drive, fired multiple rounds into the air and returned inside.  Officers learned that the resident was Daniel Kovacic.

A woman, K.S., exited the residence and spoke with officers, explaining that she did not hear any gunshots.  She had seen a gun in the home previously, located in the couch cushion. While police were speaking with K.S., Defendant Kovacic's mother called K.S.'s phone. Defendant's mother spoke with Patrolman Anthony Didona.  She stated that Defendant was in some sort of mental crisis, was using narcotics and had sent her several disturbing text messages that day in which he threatened federal agents and vowed to kill "the enemies of the white race ... without hesitation ... or remorse ever."  "The time stamp on the messages indicate [sic] that they were sent at approximately 5:30 pm while police were on the property surrounding the residence."  (Warrant Affidavit, ECF DKT #42-1 at 4).

Defendant's father contacted Wickliffe police and informed them that a week earlier, Defendant took a drug test at his urging.  The test came back positive for cocaine.  Officers also learned from Defendant's boss that he had terminated Defendant on August 17, 2023, for being intoxicated and unprofessional in interaction with a client.  Officer Didona and a detective went to Defendant's mother's house.  She showed them her son's text messages from that day and sent them screenshots by email.  One message referenced federal agents and read in part:  "But we will kill any enemies of the white race."  (Warrant Affidavit, ECF DKT 42-1 at 6).

Law enforcement attempted unsuccessfully on August 17, 2023, to contact Defendant in the residence by cell phone and by using a PA system.  Defendant was observed in an upstairs window and was ordered to come to the front door.  Defendant complied and was taken into custody without incident.

The Wickliffe Police Department executed a search warrant at Defendant's residence at 1548 Ridgewick Drive.  Officers found a fully loaded Sig Sauer, Model P238, .380 caliber pistol

bearing serial number 27B206165 located between the back of the couch and a couch cushion in the living room.  An Uncle Mikes firearm holster for the Sig Sauer was found on the armrest of the couch.  In addition, inside a pair of shorts located on the floor of the living room was a 9mm magazine loaded with seven rounds of 9 mm ammunition.  In Defendant's bedroom, officers found a black plastic Sig Sauer gun case bearing the serial number 27B206165, with 1 round of .380 ammunition, and 32 rounds of 9 mm ammunition.  They also found a plastic gun holster that appeared to fit the Sig Sauer.  Outside of the residence, officers found two spent .380 caliber shell casings.

On September 19, 2023, Special Agent John M. Laurito from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), examined the firearm and ammunition seized on August 17, 2023.  He concluded that the Sig Sauer pistol and the ammunition were not manufactured in the State of Ohio and thus, likely crossed interstate lines.

ATF also provided records of the purchase history for the firearm.  The records reveal that the gun was purchased on March 3, 2021, by an individual named Andrew John Reid of Mentor, Ohio.

On September 20, 2023, Defendant was named in a Single-Count Indictment in the Northern District of Ohio.  The Indictment alleges that on August 17, 2023, Defendant possessed a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(8).

Specifically, the Indictment states:

On or about August 17, 2023, in the Northern District of Ohio, Eastern Division, Defendant DANIEL KOVACIC, knowing he had previously been convicted of crimes punishable by imprisonment for a term exceeding one year, those being: Felonious Assault, a felony of the second degree, on or about May 24, 2010, in Case Number 09-CR-819, in the Lake County Court of Common Pleas; and Assault on a Peace Officer, a felony of the fourth degree, on or about

-3-

February 4, 2010, in Case Number 09-CR-546, in the Lake County Court of Common Pleas, knowingly possessed in and affecting interstate commerce a firearm, to wit: a Sig Sauer, Model P238, .380 caliber pistol bearing serial number 27B206165 and ammunition, said firearm and ammunition having been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(l) and 924(a)(8).

On September 27, 2023, FBI special agents arrested Defendant at the Willoughby Municipal Court located at 4000 Erie Street, Willoughby, Ohio.  A search of Defendant incident to the arrest discovered a black Samsung S23 cellular phone, IMEI: 351059812460609.  This cellular phone, which is the subject of the instant Motion to Suppress, was entered into evidence at 1501 Lakeside Avenue, Cleveland, Ohio.

Defendant was taken into federal custody on September 27, 2023, and he remains so detained.

Also on September 27, 2023, FBI Special Agent Lane Thorum applied to a federal magistrate judge for a search warrant.  The Application and Affidavit (ECF DKT #42-1) requested a search of the black in color Samsung S23 cellular phone, IMEI: 351059812460609 for "evidence of a crime;" "contraband, fruits of crime or other items illegally possessed;" and "property designed for use, intended for use, or used in committing a crime."  The search was described as related to violations of 18 U.S.C. § 922(g)(1) Felon in Possession of Firearm; and 18 U.S.C. § 875 Interstate Communications, of which subsection (c) reads:  "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person **or any threat to injure the person of another**, shall be fined under this title or imprisoned not more than five years, or both."  (Emphasis added).

On December 5, 2024, Defendant filed the Motion to Suppress Search of Black Samsung S23 Cellular Phone.  The Government responded on January 10, 2025.  Defendant's Reply was

filed on February 28, 2025.

## II. LAW AND ANALYSIS

### Standard of Review

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

In *Illinois v. Gates*, the Supreme Court announced the basic standard for determining whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her], ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

426 U.S. 213, 238-39 (1983) (emphasis added); *see also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *Davidson*, 936 F.2d at 859.

A finding of probable cause "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236.  However, reviewing courts must ensure that the issuing magistrate or

judicial officer did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)).  Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'"  *Id*. at 915, (quoting *Gates*, 462 U.S. at 239)).

A reviewing court concerns itself with only those facts which appear within the four corners of the affidavit.  *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998) (citing *Whitley v. Warden*, 401 U.S. 560, 564-65 (1971)); *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973).  There is a presumption of validity with respect to affidavits supporting search warrants.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  However, if the affidavit contains false statements that are shown to have been made knowingly and intentionally, or with reckless disregard for the truth, and if those false statements were necessary to the finding of probable cause, the evidence seized pursuant to the warrant will be suppressed.  *Id*. at 155-56.  Inaccurate statements that are the result of mere negligence or mistake do not fall within the framework of *Franks*.  *Id.* at 171.  Courts should "remain cautious not to interpret the language of affidavits in a hyper-technical manner."  *Weaver*, 99 F.3d at 1378.   A *Franks* claim entails a two-part analysis:  (1) whether the defendant has shown by a preponderance of the evidence that the false statements were deliberately or recklessly made; and (2) "whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant."  *United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998).

Defendant argues that he is entitled to a *Franks* hearing because the Affidavit contained false and misleading information.  To be entitled to a hearing, Defendant has a heavy burden.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).  Defendant's "allegations must be more than conclusory.  He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth."  *Id*. (citing *Franks*, 438 U.S. at 171).  Moreover, Defendant must accompany his allegations with an offer of proof, such as affidavits or sworn or otherwise reliable statements of witnesses.  *Franks*, 438 U.S. at 171.

**"Fruit of the poisonous tree"**

Defendant contends that any evidence obtained from the search of the cellular phone should be suppressed as "fruit of the poisonous tree."  He argues:  "But for the unlawful search [of the residence] on August 17, 2023, the cellular device would have never been seized by law enforcement."  (ECF DKT #60 at 8).

To determine whether evidence should be excluded as "fruit of the poisonous tree," the question is whether the evidence "has been come at by exploitation of [the underlying] illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

As the Court has already determined in a separate order, the search of Defendant's residence on August 17, 2023, was legal pursuant to a valid search warrant.  Moreover, for the purposes of this Search Warrant, Defendant's cellular telephone came into the possession of the Government incident to the lawful arrest of Defendant pursuant to a valid arrest warrant, which is unchallenged.  "Once a lawful arrest is made, the suspect and any 'effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest . . . and the taking of the property for use as evidence.'"  *United States v.*

*Smith*, 549 F.3d 355, 361 (6th Cir. 2008) (quoting *United States v. Edwards*, 415 U.S. 800, 807(1974)).

Therefore, the Court need not undertake the "fruit of the poisonous tree" analysis. Defendant's argument for suppression of the cellular phone search on this basis is without merit.

**Bare-bones affidavit**

A bare-bones affidavit is one that "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding the veracity, reliability and basis of knowledge." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020).

At nearly twenty pages in length, the Affidavit before the Court contains numerous factual allegations that the Affiant relied upon in reaching certain conclusions based on the Affiant's experience.  Some of these facts are:

 - On August 17, 2023, police attempted to communicate with Defendant via his cellular device.

 - Defendant sent threatening messages by text message, including threats to "kill the enemies of the white race."

 - Affiant presented ATF evidence that the firearm was purchased by someone other than the Defendant.

 - The residence search warrant return revealed the discovery of 9 mm ammunition; yet, no 9mm firearm was located on the premises.

The Affiant could reasonably conclude that the screenshots of Defendant's text messages to his mother were evidence of threats to injure the person of another.  18 U.S.C. 875(c). Defendant had prior felony convictions and was prohibited from possessing a firearm.  18 U.S.C.

§ 922(g)(1). In Affiant's experience, correspondence with co-conspirator firearm purchasers (straw-purchasers) are maintained on cellular devices. As for the gun which would match the 9 mm ammunition seized at Defendant's residence, in the Affiant's experience, cellular devices contain records of internet searches, purchases and ownership of firearms.

At this juncture, the Court cannot call this a bare-bones Affidavit. *See, United States v. Asgari*, 918 F.3d 509, 512 (6th Cir. 2019) (A ten-page affidavit "was not the kind of 'bare bones' affidavit barred by *United States v. Leon*, 468 U.S. 897 (1984)). An affidavit avoids the "bare-bones" label so long as it identifies a 'minimally sufficient' nexus between criminal activity and place to be searched. *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021). A minimally sufficient connection is "one in which there is 'some connection, regardless of how remote it may have been – some modicum of evidence, however slight – between the criminal activity at issue and the place to be searched.'" *Reed*, 993 F.3d at 451 (quoting *United States v. McCoy*, 905 F.3d 409, 416 (6th 2018)).

The totality of the facts set forth in the Affidavit establish a "fair probability" that the cellular device would contain evidence of a crime, namely Felon in Possession of a Firearm and/or Ammunition in violation of 18 U.S.C. § 922(g)(1) and Interstate Communications in violation of 18 U.S.C. § 875.

**False Statements or Material Omissions Made Deliberately or Recklessly**

Under *Franks*, a defendant has the right to "challenge the sufficiency of an executed search warrant by attacking the veracity of the affidavit supporting the warrant." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008).

A defendant is entitled to an evidentiary hearing on the truthfulness of the affidavit "if

and only if" the defendant can first present a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989) (emphasis added); *United States v. Moncivais*, 401 F.3d 751, 757 (6th Cir. 2005); *see also United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012) ("*Franks v. Delaware*, . . . mandates that a defendant 'first provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth." (internal citation omitted) (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)).

Defendant objects to the Government's recitation of the facts. In Defendant's view, the fact summary creates a false narrative that Defendant was barricaded inside of the residence and engaged in a standoff. However, Defendant conflates his arguments challenging the search of the residence with the Search Warrant at issue. The Affidavit's use of the terms "barricade" or "standoff" is irrelevant to the Court's review for probable cause to search Defendant's cellular phone.

Defendant further insists that ¶ 9 of the Affidavit (ECF DKT #42-1) is false. That paragraph recites: "The time stamp on the messages indicate [sis] that they were sent at approximately 5:30 pm while police were on the property surrounding the residence." It is now established that "these messages were sent at: 3:18 PM, 3:20 PM, 3:21 PM, 3:22 PM, and 3:24 PM on August 17, 2023, all significantly prior to police arrival at Ridgewick at approximately 4:05 to 4:10 PM on August 17, 2023." (Defendant's Reply, ECF DKT #60 at 5). Also, Defendant points out that the Affiant, who possesses specialized knowledge about cellular devices, should have understood how to interpret the time stamps on the messages from

Defendant's phone.  Defendant contends therefore, that Affiant was negligent in incorporating the screenshots of the messages and the allegation of the 5:30 PM time stamp into the Affidavit.

The Government counters that the screenshots provided by Defendant's mother only indicated the "5:30 PM" time stamp.  Subsequent forensic examination, which required a controlled laboratory environment and substantial time, extracted the specific times for each message and revealed that it was Defendant's mother's response that was sent at 5:30 pm on August 17, 2023.

An affiant's negligence or innocent mistake is insufficient to warrant a *Franks* hearing as "*Franks* recognizes that the information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made."  *United States v. Rodriguez-Suazo*, 346 F.3d 637,648 (6th Cir. 2003) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)).

Defendant has no evidence of Affiant's state of mind; and Defendant fails to show by a preponderance of the evidence that Affiant's statements about the messages were deliberately false.  Defendant's challenge to the Affiant's veracity fails.  In addition, the timing of the messages in relation to the police activity outside the residence on August 17, 2023, is not relevant to whether Defendant's cellular device contained evidence of a crime justifying a search.  Even if, *arguendo*, these portions of the Affidavit were proven false, they can be removed without defeating the probable cause showing.  An affidavit, with the false part excised, will still establish probable cause if it "'provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at the stated

-11-

location.'"  *Mastromatteo*, 538 F.3d at 545 (quoting *Graham*, 275 F.3d at 504).

A hearing under *Franks v. Delaware* may be predicated on material omissions.  *Graham*, 275 F.3d at 506; but the Sixth Circuit has "recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkins*, 107 F.3d 1213, 1217 (6th Cir. 1997); *see also Graham*, 275 F.3d at 506 (a *Franks* hearing is only merited in cases of omissions in 'rare instances').

Defendant offers the sworn Affidavit of Defendant's mother, Nancy Holzheimer (ECF DKT #42-2) to illustrate that the Affidavit for the Search Warrant contained falsehoods and material omissions.  Defendant's mother denies telling the police that Defendant was abusing narcotics or that she found the messages disturbing.  Nevertheless, law enforcement provided evidence from Defendant's father corroborating Defendant's abuse of drugs.  This dispute would not matter in any event, because the search of the cellphone was not concerned with evidence of drug crimes.  In addition, the question is not whether Defendant's mother found the messages disturbing; rather, whether these messages and others possibly recovered after forensic examination would constitute evidence of a violation of the Interstate Communication statute.  Thus, the Court could excise what Affiant relays about the mother's statements in ¶ 9, and the Affidavit would still satisfy the probable cause standard.

Defendant's mother also swears in her Affidavit (ECF DKT #42-2) that Defendant was hacked.  The text was not something her son would say and "was something that definitely correlated to the horrible hacking."  (*Id*. at ¶ 6).  Defendant insists that the Government omitted these contentions from the Affidavit presented to the magistrate judge.  However, Special Agent

Thorum does aver that data retrieved from the Device can uncover evidence of "who possessed or used the device, and sometimes by implication who did not."  (ECF DKT #42-1 at 8-9).  "Forensic evidence on a digital device can also indicate who has used or controlled the device," and "may be evidence of who used or controlled the digital device at a relevant time, and potentially who did not."  (*Id.* at 12).  Also, "the presence or absence of counter-forensic programs, anti-virus programs (and associated data), and malware may be relevant to establishing the user's intent and the identity of the user."  (*Id.* at 13).  "Analysis of the digital device as a whole to demonstrate the absence of particular data or software requires specialized tools and a controlled laboratory environment and can require substantial time."  (*Id.* at 14).

Taking Holzheimer's Affidavit as true, Defendant is correct that the Affidavit for the Search Warrant does not mention hacking of Defendant's cellular phone.  However, the description of the proposed forensic examination includes the ability to determine who used the Device and whether or not there is malicious malware in the Device.  Therefore, the Court does not find that there is a critical omission when FBI analysis may even confirm Defendant's alleged suspicion that his phone was hacked by someone else who was responsible for the messages.

Defendant has not satisfied the substantial burden of showing a false statement or material omission was made either knowingly or intentionally, or with reckless disregard for the truth.

Defendant makes passing mention that the text messages are irrelevant because they do not include the use or possession of firearms.  This contention has no weight since a violation of the Interstate Communications statute 18 U.S.C. 875(c) does not require the use or possession of

firearms in the "threat to injure the person of another." Defendant also briefly asserts that the text messages should not have been considered because they are constitutionally protected speech, and should not have been used since the law enforcement search invaded Defendant's privacy. The Court disregards these challenges. Defendant neglects to mention that his mother provided her phone containing her son's messages to law enforcement and additionally, emailed screenshots of the texts to the police.

### III. CONCLUSION

Upon review of those facts which appear within the four corners of the Affidavit and finding no deliberate falsehoods nor material omissions, the Court holds that the magistrate judge had a substantial basis for concluding that probable cause existed to issue a warrant to search Defendant's black Samsung S23 cellular phone, IMEI: 351059812460609.

Therefore, the Court DENIES the Motion (ECF DKT #42) of Defendant Daniel Kovacic to Suppress Search of Black Samsung S23 Cellular Phone in its entirety, without a hearing.

**IT IS SO ORDERED.**

**DATE: March 25, 2025**

    **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

-14-